GREEN v GREEN

Docket No. 78-1508. Submitted October 12, 1978, at Lansing.—Decided December 28, 1978.

Plaintiff, David Green, was married to but separated from defendant, Debbie Green, and the parties had one minor child. All were living in Texas when plaintiff took the child and moved into his parents' home in Ann Arbor. Defendant immediately filed in a Texas court for divorce and custody of the child. Plaintiff then filed for an order of custody in the Washtenaw Circuit Court and was granted temporary custody. Mrs. Green obtained a Texas judgment of divorce and custody. She then came to Michigan and moved the court to enforce the Texas judgment. The court accorded the Texas judgment full faith and credit but stayed execution to allow plaintiff an opportunity to petition the Texas court for an amendment. When plaintiff learned that he could not petition for a change in Texas for one year, he petitioned the Michigan court to reconsider and determine custody. Judge Ross Campbell then telephoned the Texas court and the judges agreed that it would be expedient for the Michigan court to determine custody. After a hearing the Washtenaw Circuit Court granted custody to plaintiff so long as he remained unmarried and living in his parents' home. Defendant appeals. *Held:*

1. The purposes of the Uniform Child Custody Jurisdiction Act are to assure that child custody is determined by the state that can best decide the case in the interests of the child and to discourage relitigation and unilateral removal of children by avoiding judicial conflicts and by promoting cooperation and exchange of information between judges; a mutual decision of judges of a Michigan court and a foreign court that the Michigan court should decide custody in a case adequately serves the purposes of the act where the judges conversed by phone, later

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 42 Am Jur 2d, Infants §§ 33, 41.

Jurisdiction to award custody of child having legal domicil in another state. 4 ALR2d 7.

Jurisdiction of court to award custody of child domiciled in state but physically outside it. 9 ALR2d 434.

confirmed by letter of record, and the decision was officially recorded in the Michigan proceeding.

2. The determination of child custody should be made by the court most likely to decide correctly, that is, by the court having maximum access to the relevant evidence; thus, a Michigan court which had all the parties concerned with the child's welfare before it and which had been provided studies of the child's present Michigan home and potential home in a foreign jurisdiction properly exercised jurisdiction to determine custody under the Uniform Child Custody Jurisdiction Act despite the petitioner's failure to return the child to the one entitled to custody under a decree of the foreign jurisdiction entered in an action commenced subsequent to the child's removal to Michigan.

3. The trial court did not err in deciding custody in the best interests of the child without recognizing a presumption so as to place a burden of proof on either party.

4. The trial court did not abuse its discretion in making its order of custody in contemplation of possible changes in environment since, upon a material change in circumstances, the noncustodial parent may petition for a change of custody by law, which the order merely recognized, and since the order does not automatically shift custody upon the happening of the stated contingencies.

Affirmed.

1. PARENT AND CHILD—CUSTODY—JURISDICTION—STATUTES—STATUTORY PURPOSE.

The purposes of the Uniform Child Custody Jurisdiction Act are to assure that child custody is determined by the state that can best decide the case in the interests of the child and to discourage relitigation and unilateral removal of children by avoiding judicial conflicts and by promoting cooperation and exchange of information between judges; a mutual decision of judges of a Michigan court and a foreign court that the Michigan court should decide custody in a case adequately serves the purposes of the act where the judges conversed by phone, later confirmed by letter of record, and the decision was officially recorded in the Michigan proceeding (MCL 600.651 *et seq.;* MSA 27A.651 *et seq.).*

2. PARENT AND CHILD—CUSTODY—JURISDICTION—STATUTES.

The determination of child custody should be made by the court most likely to decide correctly, that is, by the court having maximum access to the relevant evidence; thus, a Michigan

court which had all the parties concerned with the child's welfare before it and which had been provided studies of the child's present Michigan home and potential home in a foreign jurisdiction properly exercised jurisdiction to determine custody under the Uniform Child Custody Jurisdiction Act despite the petitioner's failure to return the child to the one entitled to custody under a decree of the foreign jurisdiction entered in an action commenced subsequent to the child's removal to Michigan (MCL 600.651 *et seq.;* MSA 27A.651 *et seq.).*

*Jack Dulgeroff (Toomey, Stewart & Bambery,* of counsel), for plaintiff.

*William H. Price, Jr.,* for defendant.

Before: Danhof, C.J., and Bashara and Cynar, JJ.

Danhof, C.J. This case involves the custody of a minor child, presently living with her father, the plaintiff, and her paternal grandparents at the latter's home in Ann Arbor.

The plaintiff brought the child to Michigan in February, 1977, from Texas, where he had separated from the child's mother. Subsequently, the mother, defendant in this suit, won custody of the child by default judgment filed in Texas on June 2, 1977, and within two weeks thereafter came to Michigan to enforce the decree in the Washtenaw County Circuit Court. The circuit court agreed to accord full faith and credit to the Texas judgment, but stayed enforcement until the father had had a reasonable opportunity to petition the Texas court for an amendment based on a change in circumstances.

The plaintiff discovered that by Texas law the judgment could not be amended in that state for one year. Therefore, he petitioned the Washtenaw court to reconsider its order and determine the

permanent custody of the child. The Washtenaw County Friend of the Court informed the court that, because the child was in a critical stage of her development, it was imperative to decide the custody question immediately.

Whereupon, Washtenaw County Circuit Judge Ross Campbell telephoned the Texas court that had entered the initial custody decree to discuss whether Michigan should exercise its concurrent jurisdiction to modify the decree. The judges agreed by phone, later confirmed by letter of record, that it would be expedient for the Michigan court at that time to make some determination of the child's custody. Accordingly, Judge Campbell held a hearing which both parties attended with counsel, and concluded it was in the best interest of the child to stay with the father so long as he remained unmarried and living at his parents' home.

The defendant appeals that decision raising issues under both the Uniform Child Custody Jurisdiction Act, MCL 600.651 *et seq.;* MSA 27A.651 *et seq.,* and the Child Custody Act, MCL 722.21–722.29; MSA 25.312(1)–25.312(9).

## I

She first contends that the Washtenaw County Circuit Court did not have subject matter jurisdiction to determine questions relating to the child's permanent custody. The authority to modify the custody decree of a foreign court is granted and conditioned by three sections of the Uniform Child Custody Jurisdiction Act.

The basic grant of jurisdiction is in § 3 (MCL 600.653; MSA 27A.653) which provides in pertinent part:

"(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

"(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

Neither party seriously contends that the Washtenaw County Circuit Court lacked minimal jurisdiction. The plaintiff asserts that the court had jurisdiction under subsections 3(a)(1) and 3(a)(2). We agree there was jurisdiction under 3(a)(2).[1]

---

[1] The "home state" concept is not clearly applicable. At the time the child's mother commenced enforcement proceedings on June 2, 1977, the 22-month old child had not lived in either Michigan or Texas for six consecutive months. The father challenged the enforcement on jurisdictional grounds. When the father moved the Washtenaw County Court to reconsider its order and to modify the Texas decree on grounds of changed circumstances on September 28, 1977, the child had been living in Michigan for more than six consecutive months (since the end of February). Subsection 3(a)(1) was apparently drafted with initial custody proceedings in mind. *See* 9 Uniform Laws Annotated, Uniform Child Custody Jurisdiction Act, Commissioner's Note, § 3, p 107, *citing* Ratner, *Child Custody in a Federal System*, 62 Mich L Rev 795, 818 (1964). Neither the act nor the commentary indicates whether the date of the above enforcement or modification petitions should be considered "the time of the proceeding" under subsection 3(a)(1). The parties have not pointed us to a case that would aid us in that determination.

In any event, subsection 3(a)(2) jurisdiction is established by the facts that the father is domiciled in this state, the child's four (or six) month stay established significant contacts, all individuals who have

The first condition to a court's § 3 jurisdiction to modify a foreign custody decree is stated in subsection 14(a), MCL 600.664(1); MSA 27A.664(1):

"If a court of another state has made a custody decree or judgment, a court of this state shall not modify that decree or judgment unless it appears to the court of this state that the court which rendered the decree or judgment does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 651 to 673 or has declined to assume jurisdiction to modify the decree or judgment and the court of this state has jurisdiction."

The theory of this subsection is that courts rendering custody decrees normally retain continuing jurisdiction to modify them, and other states, in order to achieve greater stability of custody arrangements and avoid forum shopping, will defer to that continuing jurisdiction so long as the original state retains jurisdiction under the standards of the act. 9 Uniform Laws Annotated (Master ed), Uniform Child Custody Jurisdiction Act, Commissioner's Note, p 122. (Hereinafter Commissioner's Note.)

In this case, as the Washtenaw County Circuit Court acknowledged, Texas retained continuing jurisdiction to modify its original decree. See Commissioner's Note, *supra.* We find, however, that the Texas court declined to exercise jurisdiction by its phone conversation and letter.

In determining whether to decline or retain jurisdiction, the Texas and Michigan judges admi-

---

an interest in the child's well being and custody were either domiciled in Michigan or sought to enforce their legal rights by way of enforcement or permanent custody petitions in this state, and substantial evidence concerning the child's present or future care, protection and training clearly was available in this state. Accord, *Nelson v District Court ex rel Second Judicial District,* 186 Colo 381; 527 P2d 811 (1974).

rably followed the procedures prescribed by the Uniform Child Custody Jurisdiction Act, § 7, MCL 600.657; MSA 27A.657, including the suggestion in subsection d that the courts communicate and exchange pertinent information.[2]

In her brief the defendant complains that the Texas court's declination of jurisdiction was too informal, that "courts speak through their written orders, not through letters between Judges". Neither the language of § 14 nor the corresponding commissioner's notes require a court to formally decline to assume jurisdiction. The act is to be construed to promote its purposes, which are generally to assure that child custody is determined by the state that can best decide the case in the interest of the child, and to discourage relitigation and unilateral removal of children by avoiding judicial conflicts and by promoting cooperation and exchange of information between judges. See Uniform Child Custody Jurisdiction Act, § 1, MCL 600.651; MSA 27A.651. While we would encourage judges in the future to decline jurisdiction by order, we find the purposes of the act were adequately served in the present case by the judges' mutual decision and its official recordation.

A second qualification to a court's authority to modify under § 3 is the "clean hands" principle of MCL 600.658(2); MSA 27A.658(2). That subsection is in two parts. The first mandates the court, "[u]nless required in the interest of the child," to decline to exercise jurisdiction to modify a foreign custody decree "if the petitioner, without consent of the person entitled to custody, has improperly

---

[2] In addition to concurring with Michigan jurisdiction, the Texas court by its letter informed the Washtenaw County Court that the mother's attorney had moved for a prompt home investigation of the mother in Texas. The Texas court promised that it would order a copy of any such investigation to be forwarded to Michigan.

removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody". Clearly, the present plaintiff's acts of removing his daughter from Texas and keeping her in his parents' home after the Texas decree was entered do not fall within the last clause of the quoted sentence. Neither do we reason that his removal was improper under the preceding clause. "Improperly" under subsection 8(b) means illegally, qualified by a special circumstances justification. Commissioner's Note § 8(b), p 116. Compare, Uniform Child Custody Jurisdiction Act, § 8(a), MCL 600.658(1); MSA 27A.658(1) (definition of "wrongfully"). Since both spouses had a right to custody until a court determination was made, and since the plaintiff removed the child from Texas before the Texas court entered its initial decree, his acts were not illegal.

Part two of subsection 8(b) requires the court in its discretion to decline to exercise jurisdiction, "if the petitioner has violated any other provisions of a custody decree or judgment of another state * * * [and it] is just and proper under the circumstances" to decline jurisdiction. We agree with the Oregon case of *Settle v Settle,* 276 Or 759; 556 P2d 962 (1976), *rev'g,* 25 Or App 579; 550 P2d 445 (1976), that the failure to return a child to the one entitled to custody under the decree of another state amounts to a violation of that state's decree under part two of subsection 8(b). Under the circumstances of this case, however, the Washtenaw County Circuit Court did not abuse its discretion in retaining jurisdiction.

In *Settle, supra,* the Oregon Supreme Court held it was proper for a lower court to exercise jurisdic-

tion to modify an Indiana custody decree even though the petitioner's failure to obey the foreign decree was aggravated by her acts of removing the children from Indiana to Oregon during the pendency of a marriage dissolution proceeding in Indiana and secreting the child's whereabouts in Oregon. In contrast, the petitioner in the present case removed his daughter to Michigan before his wife began marriage dissolution proceedings in Texas and never secreted the child's whereabouts in this state. Indeed, the petitioner obtained a temporary custody order shortly after he arrived in Michigan, and has maintained custody ever since under a series of orders and judgments of the Washtenaw County Circuit Court.

In the final analysis the court should not decline jurisdiction under the clean hands principle to punish the parent at the expense of the child. *Settle, supra; Nelson v District Court ex rel Second Judicial District,* 186 Colo 381; 527 P2d 811 (1974). Professor Leonard Ratner emphasizes that "[t]he welfare of the child is the first consideration in determining its custody", and *"[t]his determination should, whenever feasible, be made by the court most likely to decide correctly, i.e., by the court having maximum access to the relevant evidence".* (Emphasis in original.) Ratner, *Child Custody in a Federal System,* 62 Mich L Rev 795, 809 (1964). In the instant case the Washtenaw County Circuit Court had all the parties concerned with the child's well being before it and had been provided studies of the child's present home in Michigan and potential home with her mother in Texas. We find it was the court most likely to decide the custody question correctly. *Cf. Nelson, supra,* (best interests of child should be determined by state with maximum access to evidence, even

when petitioner has violated mandatory part of equity section).

*McDonald v McDonald,* 74 Mich App 119; 253 NW2d 678 (1977), relied on in opposition to the circuit court's retention of jurisdiction, is clearly distinguishable from the present case.[3]

## II

The defendant's brief raises three issues under the Child Custody Act. All three call into play the following standard of review:

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; MSA 25.312(8).

### A. Burden of Proof.

In deciding the custody rights of the child in this case the circuit court apparently proceeded under the act's § 5, MCL 722.25, MSA 25.312(5), to determine the best interests of the child, without allocating a special burden of proof to either side. The nonprevailing defendant claims the court should have proceeded under § 7, MCL 722.27; MSA 25.312(7), to place the burden of proof by clear and

---

[3] A Michigan court in that case declined to exercise concurrent jurisdiction to determine permanent custody over children that had been removed by their mother during the pendency of permanent custody proceedings in Washington. In contradistinction to the present case, the Washington and Michigan courts in *McDonald* had not mutually decided that Michigan would be a more appropriate forum under the policies of the act. We note also that the decision to exercise concurrent jurisdiction over pending custody proceedings is distinct in a policy sense from the decision to modify an already entered custody decree. The two decision making processes are guided by different rules under the Uniform Child Custody Jurisdiction Act. For provisions applicable to simultaneous custody proceedings see § 6, MCL 600.656; MSA 27A.656.

convincing evidence on the plaintiff. Section 7 provides in part that: "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the *established custodial environment* of a child unless there is presented clear and convincing evidence that it is in the best interest of the child".

We find § 7 inapplicable to the case at bar, since the court's order did not change the established custodial environment. Such an environment is created "if over an appreciable time the child naturally looks to the custodian in such environment for guidance, discipline, the necessities of life and parental comfort". *Id.* At the time the defendant petitioned the Washtenaw County Circuit Court for enforcement of the Texas decree, the child had been gone from her for four months. When the plaintiff moved for a modification of the Texas decree, the child had been with him for 6 months, and for 13 months at the time of trial. If anywhere, the established custodial environment was with the plaintiff in his parents' home. *Cf. Berman v Berman,* 84 Mich App 740; 270 NW2d 680 (1978) (in determining whether custodial environment has been established, look to existing custodial arrangement rather than denomination of custody decree).

We would not go so far, as the plaintiff would have us, to place the burden of proof by clear and convincing evidence on the defendant. That would disrespect the Texas court's earlier finding that "it would be in the best interest of said child if the Petitioner herein, Deborah Green, were appointed to be the Managing Conservator". Under the special circumstances of this case, the judge did not err in determining the best interests of the child without recognizing a presumption in favor of either parent.

*B. Findings of Fact.*

We disagree with the defendant that the trial court failed to make findings on each of the factors enumerated in § 3 of the Child Custody Act, MCL 722.23; MSA 25.312(3). We have reviewed each of the court's findings, together with the defendant's corresponding objections, and have not found them to be against the great weight of the evidence.

*C. Finality of the Custody Determination.*

After specifying the various kinds of relief a circuit court may grant in a custody dispute, § 7 of the Child Custody Act authorizes the court to "[t]ake any other action considered to be necessary". MCL 722.27(f); MSA 25.312(7)(f). This broad authority, however, is qualified by the objectives of the act, one of which is to achieve stability in a child's home environment. *Berman v Berman, supra.*

The defendant contends that the circuit court's order in the instant case, by granting custody to the plaintiff so long as he remains unmarried and living with his parents, undermines the stability objective. While we do not generally favor orders that contemplate a probable change in environment, we cannot say the circuit court committed a palpable abuse of discretion.

The courts of this state, under the particular circumstances of the cases presented, have upheld custody decrees that were probationary, *McLay v McLay,* 354 Mich 19; 91 NW2d 824 (1958), alternative, *Schilleman v Schilleman,* 61 Mich App 446; 232 NW2d 737 (1975), and temporary, *Berman v Berman, supra.* All of the above decisions are distinguishable from the present, it is true, in that the custody decrees upheld were reviewable after specified periods of time. The decree on review here is more indefinite. It is similar to the above-

accepted decrees, nonetheless, in that it does not contemplate an automatic shift in the custodial environment upon happening of the stated contingencies. Rather, it calls for a hearing and review of the custody decision under the then-existing circumstances. Clearly, the home the plaintiff had made for the child with his parents was a material circumstance in Judge Campbell's decision.[4] Upon a change in material circumstances a nonprevailing parent may seek to modify or change an earlier custody order. By restating that right in its order, the circuit court has not obviously thwarted the statutory purpose.[5]

Affirmed. Costs to appellee.

[4] The circuit court stated in its opinion:

"I must say that my decision is based in large part on the fact that the child is now living in Mr. Green's home, which he is making with his parents, and I stress with his parents, and I do not contemplate the child being removed from that home and Mr. Green being there with it without the Court reconsidering the effect which that would have on the child and what kind of a home is offered at that point in time by both Mr. Green and by the present Mrs. Gregory."

[5] To the extent the mother's objection on this point is really a challenge to the court's findings of fact under subsection 3(e) as to "the permanence, as a family unit, of the existing or proposed custodial home", MCL 722.23(e); MSA 25.312(3)(e), we incorporate our summary holding under Part II-B.

We add here that subsection 3(d) of the act requires the court also to consider and evaluate "[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity". MCL 722.23(d); MSA 25.312(3)(d). Given that the child had lived in its existing home for 13 months at the time of trial and that the Friend of the Court had reported she was in a critical stage of her development, we cannot say it was against the great weight of evidence that her best interests lie in her staying with the father.