In re the Matter of Michelle
LEMOND, a Minor Child.

Jeanene McCORMACK,
Petitioner-Appellant,

v.

Earl LEMOND, Respondent-Appellee.

No. 1–1278A360.

Court of Appeals of Indiana,
First District.

Oct. 30, 1979.

Rehearing Denied Dec. 4, 1979.

David B. Hughes, Hughes & Hughes, Indianapolis, Robert S. LaPlante, Stone & Keck, Evansville, Valentine J. Fleig, Rauch & Fleig, Petersburg, for petitioner-appellant.

Russell E. Mahoney, Thomas C. Gray, Gray, Stratton & Mahoney, Petersburg, for respondent-appellee.

ROBERTSON, Judge.

Petitioner-appellant Jeanene McCormack (Mother) appeals a judgment declaring that respondent-appellee Earl Lemond (Father) is entitled to the physical custody of their daughter, Michelle Lemond.

The factual picture presented to this court displays a paradigm for the issue of whether the exercise of jurisdiction to modify a foreign custody decree pursuant to the Uniform Child Custody Jurisdiction Law, *Ind.Code* 31–1–11.6–1 *et seq.*,[1] is proper. The volunteered findings by the court below together with the relevant portions of the record reveal the following sequence of events. Mother and Father were married and living in Hawaii· when Michelle was born on May 1, 1968. The deterioration of the marital enterprise culminated in a Hawaiian divorce decree on December 10, 1973, which provided as follows:

---

1. Hereinafter referred to as the "Act." As seen *infra*, Hawaii has also adopted the Act.

IN THE FAMILY COURT OF THE FIRST CIRCUIT
STATE OF HAWAII

| | | |
|---|---|---|
| JEANENE LEMOND, | ) | |
| | ) | |
| Plaintiff, | ) | FC–D NO. 86285 |
| | ) | |
| v. | ) | DECREE GRANTING ABSOLUTE |
| | ) | DIVORCE AND AWARDING CHILD |
| EARL LEMOND, | ) | CUSTODY |
| | ) | |
| Defendant. | ) | |

## DECREE GRANTING ABSOLUTE DIVORCE AND AWARDING CHILD CUSTODY

The above-entitled action came on for hearing on December 4, 1973 before the Family Court.

Following the hearing and after full consideration of all of the evidence, the Court found the material allegations of the complaint for divorce to be true, the Plaintiff to be entitled to a divorce from the bonds of matrimony on the grounds specified in the written findings on file herein, and the Court to have jurisdiction to enter this decree. Now, therefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

(1) A decree of absolute divorce is hereby granted to Plaintiff, the bonds of matrimony between Plaintiff and Defendant are hereby dissolved and the parties hereto are restored to the status of single persons, and either party is permitted to marry from and after the effective date of this decree.

(2) That Plaintiff and Defendant are awarded the care, custody and control of the minor child of the parties. Defendant shall have the physical custody of the minor child; provided, however, that at the time either Plaintiff or Defendant leaves the State of Hawaii for a change of residence, the legal and physical care, custody and control of the minor child shall be awarded to Plaintiff subject to Defendant's rights of reasonable visitation. The custodian shall keep the non-custodial parent informed of the residence address of the minor child.

(3) The name and birth date of the minor child of the parties are as follows:

| Name | Birth Date |
|---|---|
| MICHELE [sic] DANETTE LEMOND | May 1, 1968 |

\*    \*    \*

DATED: Honolulu, Hawaii, Dec. 10, 1973.

s/ Patrick K. S. L. Yim
JUDGE OF THE ABOVE ENTITLED COURT

APPROVED AS TO FORM:

s/ Earl Lemond
EARL LEMOND

---

Mother and Father continued[2] their residency in Hawaii and complied with the terms of the decree. Usually, Michelle spent the substantial portion of the summer

2. Both parties have remarried.

months with the parties' grandparents in Pike County, Indiana.

Custodial rights fell into dispute following the Father's return in June, 1977, to Pike County, Indiana.[3] Instead of returning Michelle to Hawaii at summers close, Father enrolled her in a local school. Mother then went to Indiana and deceptively secured Michelle's return. Michelle was thereafter enrolled in and attended school in Hawaii from September, 1977, to May, 1978. But while Mother was in Europe during May, 1978, Father went to Hawaii and brought Michelle back to Indiana. Mother returned from Europe and, after being appraised of this state of affairs, unsuccessfully sought the return of Michelle in Indiana.

On May 19, 1978, Mother filed a petition for the enforcement of the Hawaiian decree (see IC 31–1–11.6–13, –15) and a writ of habeas corpus. Father countered with a petition to modify the Hawaii decree. See IC 31–1–11.6–14. The trial court "denied" both petitions upon concluding that since Father was entitled to physical custody at the time the Hawaiian decree was entered, Father was still entitled to physical custody. Since we believe the trial court failed to implement the letter and spirit of the Act, we reverse.

We begin our analysis with the relevant purposes of the Act as proclaimed by our legislature. IC 31–1–11.6–1(a) states that it is the intent of the legislature to:

(1) [a]void jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

\* \* \* \* \* \*

(5) [d]eter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) [a]void re-litigation of custody decisions of other states in this state insofar as feasible; [and]

(7) facilitate the enforcement of custody decrees of other states[.]

The pivotal statute in issue, IC 31–1–11.6–14 provides:

Sec. 14. Modification of Custody Decree of Another State.—(a) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.

Since we are presented with an issue of first impression concerning a uniform act, we look for guidance to the decisions of other states. The Colorado Supreme Court has taken the position that an original action will lie to restrain a trial court from modifying a foreign decree where the foreign state's jurisdiction was and remains proper pursuant to the requirements of the Act. See, e. g., Kraft v. District Court In And For City And County Of Denver, 593 P.2d 321 (Colo.1979); Fry v. Ball, 190 Colo. 128, 544 P.2d 402 (1975). In the latter case, the court declared:

The underlying policy of the Act is to prevent the desperate shifting from state to state of thousands of innocent children by interested parties seeking to gain custody rights in one state even though denied those rights by the decree of another state. The provisions of the Act seek 'to eliminate jurisdictional fishing with children as bait.' Wheeler v. District Court, 186 Colo. 218, 526 P.2d 658 (1974).

Id., at 131, 544 P.2d at 405. Colorado has also recognized that forum compliance with jurisdictional standards in section 3 is, standing alone, an insufficient basis for the exercise of such jurisdiction in modifying a foreign decree. For if the foreign court still has jurisdiction and substantive law permits modification of the custody decree, a local tribunal generally must defer. See

---

**3.** The father returned to explore the plausibility of mining coal on some family property.

*Woodhouse v. District Court In And For Seventeenth Judicial District,* 587 P.2d 1199 (Colo.1978). As declared by the Michigan Court of Appeals:

> The theory of this subsection [section 14 on modification of foreign decrees] is that courts rendering custody decrees normally retain continuing jurisdiction to modify them, and other states, in order to achieve greater stability of custody arrangements and avoid forum shopping, will defer to that continuing jurisdiction so long as the original state retains jurisdiction under the standards of the act.

*Green v. Green,* 87 Mich.App. 706, 711, 276 N.W.2d 472, 474 (1979) (citation omitted).

■ To a large extent these cases merely trumpet the obvious, but we whole-heartedly adopt the sentiments embodied herein. As applied to the facts of this case, the Indiana trial court could not exercise jurisdiction to modify the Hawaiian decree if the State of Hawaii had continuing jurisdiction pursuant to section 3 and provided for the right to modification. With respect to the latter, Hawaii Revised Statutes § 571–46(6) expressly permits modification of custody awards. As to the former, Hawaii has adopted the Uniform Child Custody Jurisdiction Act (Haw.Rev.Stat. § 583–1 *et seq.*) such that section 3 of the Act is dispositive of whether Hawaii had jurisdiction on May 19, 1978.

Without question, we believe Hawaii had jurisdiction under the Act when these proceedings were commenced. As a general matter, it is clear to this court that while Michelle "vacationed" during the summer months in Indiana her predominant place of abode was in Hawaii. More specifically, Michelle had lived with Mother for over six months in Hawaii immediately preceding this action; accordingly, Hawaii was her "home state" (*see* IC 31–1–11.6–2(5)) thereby conferring jurisdiction upon Hawaiian tribunals under IC 31–1–11.6–3(a)(1)(A). For these reasons, we hold the lower court erred in assuming jurisdiction. IC 31–1–11.6–14.

■ We feel compelled to face some additional matters raised by Father. Father contends that the trial court did not "modify" the Hawaiian decree but, rather, merely enforced the "non-punitive" provisions thereof. At the outset, whether a decree has been "modified" is not dependent upon the decretal language employed but upon the *effect* of the trial court's action. *See* IC 31–1–11.6–2(7). In this case, the foreign decree was clearly modified because it mandated physical custody be in the Mother if either parent established residence in another jurisdiction. In this case, it cannot be seriously contended that Father intended to remain a resident of Hawaii.[4] The effect, therefore, of the lower court's judgment was to modify the Hawaiian decree since Father was given the physical custody of Michelle despite his change of residence.

■ Secondly, we are unable to here determine that the automatic change of physical custody was "punitive."[5] While we are inclined to agree that a foreign decree that is *designed* to punish a custodial parent for leaving the jurisdiction, rather than to protect and preserve the welfare of the child, should not enjoy total deference when brought to this state, such a case is not presented here. Father would have us declare, without any factual support in the record, that the Hawaiian court fashioned its decree so as to punish the Father rather than benefit the child. This invitation we summarily decline. Until facts and circum-

---

4. On or about June 4, 1977, Father remarried and came to Indiana to explore the possibility of coal mining. He terminated his residency lease in Hawaii and sold his car located there. In December, 1977, Father stated under oath that he was an Indiana resident when he filed articles of incorporation. In March of 1978, Father registered to vote in Indiana, and testified that at least by the time of this action, he considered himself an Indiana resident. In all, the Father has been in Indiana since the fall of 1977.

5. *See generally* Bodenheimer, *Progress Under the Uniform Child Custody Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications* 65 Calif.L.Rev. 978 (1977).

stances establish otherwise,[6] we believe the motivations of foreign tribunals must be presumed to be based upon a desire to further the best interests of the child.

Father also contends that inasmuch as Michelle wants to live in Indiana, has substantial contacts in Indiana, and that Father is fit and suitable to care for her, the trial court should be affirmed. We are not here presented, however, with the merits of this case. The thrust of the Act is *jurisdictional* because of the recognition that local partiality may significantly impair the stability of familial relations. Under the facts of this case, the trial court simply lacked the statutory authority to modify the Hawaiian decree.

■ Father additionally argues that the automatic change in custody was, in fact, a modification that was not made pursuant to the requirements for a proper hearing for the determination of the best interests of the child, *et cetera*. This vein of attack is without merit. We are dealing, purely and simply, with an original custody decree.[7]

■ Father also asserts that the Hawaiian decree should not be enforced because it impermissibly infringes upon his constitutional right to travel. The decree, it is argued, is "patently unconstitutional" under the dictates of *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Father has simply failed to carry the burden of establishing a constitutional infirmity on this score.[8] First, *Shapiro* did not involve the constitutionality of a judicial *decree*. Second, Father expressly approved the Hawaiian decree as to form. Thirdly, we are not directed to anything in the record to support Father's assertion that his right to travel was "chilled."

Fourth, Father made no attempt to modify the decree in Hawaii to remove such a "chill." And finally, the decree did provide for visitation rights. Thus, Father has not persuaded us that a constitutional infirmity exists.

For all the foregoing reasons, we reverse the decision of the trial court and remand the case with directions to recognize the Hawaiian decree pursuant to sections 13 and 15 of the Act, and for further proceedings not inconsistent with the views stated herein.

Reversed and remanded.

LOWDERMILK, P. J., and NEAL, J., concur.

---

6. Here, the lower court expressly found as fact that both Mother and Father were capable and suitable parents.

7. Father also argues Indiana does not permit a court to "anticipate" changed circumstances when a custody decree is entered, and cites *State ex rel. Davis v. Achor, Judge,* (1947) 225 Ind. 319, 75 N.E.2d 154, in support. Father has misconstrued the holding in *Achor. Achor* simply holds that as a practical matter custody

decrees must be subject to modification since no man can foresee the course of future events. We find no prohibition in *Achor* against conditional decrees. Indeed, it seems to this court that it would be unwise to limit a lower court's discretion to absolute decrees given the multifaceted dimensions of familial relations.

8. Father's brief devotes but two pages to his legal argument on this issue.