In re the CUSTODY OF Lisa HELWIG and Elaine Helwig, Minors.

William D. HELWIG, Respondent-Appellant,

v.

The Honorable Robert E. KINNEY, Circuit Judge, Circuit Court, Oneida County, Wisconsin, Matilda G. Anderson, Enforcement Requestors-Appellees.

Nos. 1282S483, 2–1180A360.

Supreme Court of Indiana.

Dec. 15, 1982.

Rehearing Denied March 3, 1983.

Sidney E. McClellan, Muncie, Frank E. Spencer, Indianapolis, for respondent-appellant.

Ronald K. Smith, Muncie, John W. Saari, Rhinelander, Wis., for enforcement requestors-appellees.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Indiana Court of Appeals. The Delaware County Superior Court ordered the petitioner, William D. Helwig, to return to Oneida County, Wisconsin, with his two minor children in order to determine the issue of custody before Judge Kinney of the Oneida Circuit Court. The Court of Appeals, Second District, *sua sponte* dismissed Mr. Helwig's appeal because the order from the Delaware Superior Court was an appealable interlocutory order and Helwig failed to file the record of proceedings, pursuant to Ind.R.App.P. 3(B), within thirty (30) days of the trial court's ruling. *In re Custody of Helwig, Minors, Helwig v. Kinney,* (1982) Ind.App., 433 N.E.2d 398.

The issues presented for review are whether the order from the Delaware Superior Court was an interlocutory order and which court entertained jurisdiction over the custody issue. We find that the Court of Appeals was in error when it *sua sponte* dismissed Helwig's appeal. Therefore, transfer is granted and the opinion of the Court of Appeals is vacated.

Lisa and Elaine Helwig are the two minors involved in the custody fight between William Helwig and his former wife, Matilda. Lisa was born in 1968 and Elaine was born in 1971. Both girls were adopted by William and Matilda out of the Family Children's Service in Fort Wayne, Indiana. The marriage of William and Matilda was dissolved in the Blackford Circuit Court on August 5, 1977. As part of the final judgment of the Blackford Circuit Court, custody of Lisa and Elaine was awarded to Matilda, with instructions by the court not to remove the girls from Indiana and to continue Elaine's treatment for cerebral palsy

at Riley Hospital in Indianapolis. On or about August 8, 1978, Matilda took the children to Massachusetts without the consent of the court and without Mr. Helwig's knowledge. Helwig had to hire a private detective in order to locate Matilda and the children in Berkshire County, Massachusetts. Matilda's attorneys had attempted to locate her in answer to a petition for change of custody Mr. Helwig had filed in September of 1978, but were unable to do so and withdrew their appearance for her. After Matilda was located through the detective agency, she was personally served notice of the filing of the change of custody petition and the date for the hearing on the matter. Matilda failed to attend the hearing on December 13, 1978, at which time the Blackford Circuit Court entered the following order:

"IT IS, THEREFORE, CONSIDERED AND ORDERED BY THE COURT:

1. That the custody of the minor children of the parties, namely, Lisa Helwig and Elaine Helwig, be and the same is hereby awarded to respondent, reserving to petitioner reasonable visitation rights with said children in the State of Indiana at such place and under such circumstances as the Court shall direct.

2. That the order of this Court made and entered on August 5, 1977 requiring respondent to pay support for said minor children is hereby terminated.

3. That this matter is continued for further hearing upon request of the petitioner."

/s/ Bruce C. Bade
Judge of the Blackford Circuit Court

Helwig took this court order to Massachusetts but was advised by a judge there that he would have to file an action there in order to gain custody of Lisa and Elaine. Helwig later filed an action for custody in Berkshire County but prior to this he attempted in vain to communicate in person and by telephone with his children. Matilda called the police, claiming that Helwig was harassing her. Before any action could be taken by the Massachusetts courts on the custody matter, however, Matilda again secretly removed the children from the state.

Helwig later learned, in November, 1979, that Matilda was living with the children in Oneida County, Wisconsin. Matilda had remarried and was now known as Matilda G. Anderson. Helwig hired an attorney in Wisconsin and was told by both the attorney and prosecuting attorney in Oneida County that it was just a matter of going through the formalities and he would have his children. In December, 1979, and January, 1980, Helwig attended two hearings but the matter was not concluded and another hearing was set for April 23, 1980. Helwig was unable to attend this hearing due to the cost involved of traveling back and forth from Indiana to Wisconsin. Helwig later returned to Wisconsin, picked up the children, and brought them back to Indiana where they resided in Delaware County.

On June 3, 1980, Wisconsin counsel for Matilda Anderson notified Judge Robert Barnet of the Delaware County Superior Court that a request was being forwarded by Judge Robert Kinney of the Oneida Circuit Court in Wisconsin, asking for assistance in enforcing Judge Kinney's orders by returning the children to the jurisdiction of the Wisconsin court for purposes of proceeding with the determination of custody. The papers were received by the Clerk of the Delaware Superior Court on June 5, and on June 9, Judge Barnet ordered notice issued to Mr. Helwig to appear, with the children, in Delaware Superior Court on July 10, 1980, at 2:00 p.m. for a hearing. Helwig, through counsel, promptly filed a Motion to Dismiss Proceeding, which stated that jurisdiction was in the Blackford Circuit Court rather than the Delaware Superior Court. This motion to dismiss was overruled on August 14 and Helwig and the children were ordered to appear in the court on August 25. At the conclusion of the August 25 hearing, the following decision was made by the Delaware Superior Court:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that William Helwig is hereby Ordered to

return to Oneida County, Wisconsin, with Elaine Helwig and Lisa Helwig, for the purpose of proceeding with a determination of the issue of custody before the Honorable Robert E. Kinney, Circuit Judge of Oneida County, Wisconsin, within ten days of this Order.

Dated at Muncie, Indiana, this 25th day of August, 1980.

/s/ Robert L. Barnet
Robert L. Barnet-Judge"

Helwig filed a motion to correct errors on September 4 and on October 3 he filed an amended motion to correct errors. On October 28, Judge Barnet overruled the amended motion and ordered Helwig into court the following day to show cause why he should not be punished for contempt of court. Judge Barnet found Helwig in indirect civil contempt and ordered him committed to the custody of the sheriff, but granted a stay to allow him time to request an appeal from the Indiana Court of Appeals. Helwig subsequently filed a verified application for stay and *supersedeas* with the Court of Appeals, which was granted. The Court of Appeals dismissed Helwig's appeal, holding the order by Judge Barnet was an interlocutory order, and in order to appeal the Delaware Superior Court's decision, Helwig should have filed the record of proceedings within thirty (30) days of the trial court's ruling. Ind.R.App.P. 3(B). The stay order and *supersedeas* is still in effect pending this petition to transfer.

The first question to be decided is whether the decision of the Delaware Superior Court was a final judgment or an order:

"A 'judgment or decree' has been defined as the final determination of the rights of a party in an action; and an 'order', generally, is a direction of the court preliminary and incidental to final determination. The distinction between an order and a judgment is one of finality, and the question is whether the order is a final determination of the rights of a party." (citations omitted).

*Department of State Revenue, Inheritance Tax Div. v. Estate of Callaway,* (1953) 232 Ind. 1, 8–9, 110 N.E.2d 903, 906–07.

*In Kalleres, et al. v. Glover, Receiver,* (1935) 208 Ind. 472, 478, 196 N.E. 679, 682, this Court held:

"A final judgment is one which disposes of the subject matter of the litigation as to the parties so far as the court in which the action is pending has power to dispose of it. *Terre Haute R.R. Co. v. Indianapolis, etc., Traction Company* (1906), 167 Ind. 193, 78 N.E. 661; *Northern Indiana, etc., Telegraph and Cable Company v. Peoples Mutual Telephone Company et al.* (1916), 184 Ind. 267, 111 N.E. 4. If the judgment settles and concludes the rights involved, and denies the parties means of further prosecuting or defending the action, it is final."

■■ A final judgment determines the rights of the parties in suit, or a *distinct and definite branch* of it, and reserves no further question or direction for future determination. *Guthrie v. Blakely,* (1955) 234 Ind. 167, 170, 125 N.E.2d 437, 438; *Pokraka v. Lummus Co.,* (1952) 230 Ind. 523, 528, 104 N.E.2d 669, 671; *Gulf Oil Corp. v. McManus,* (1977) 173 Ind.App. 147, 150, 363 N.E.2d 223, 225. Once a judgment is final, the proper method to redress alleged errors is through an appeal. In *State ex rel. Crumpacker v. LaPorte Circuit Court,* (1975) 264 Ind. 27, 338 N.E.2d 261, an attorney brought an original action, claiming that the trial court had made two orders against him without jurisdiction of his person or the subject matter. The remedy he sought was expungement of the orders. This Court, after finding that the orders were final judgments, ruled that if the orders were preceded by jurisdictional error or were themselves jurisdictionally defective, the same argument used by Helwig in this cause, the proper remedy was by way of appeal. *Id.* at 29, 338 N.E.2d at 262.

In *Burson, et al., Administrators v. National Park Bank of New York,* (1872) 40 Ind. 173, an Indiana court ordered the cause involved removed to a federal district court within the state. After appellants appealed to the Indiana Supreme Court, the appellees moved to dismiss the appeal on the grounds that there was no final judgment from

which an appeal could be taken. This Court disagreed with the appellees:

"While we feel it to be our duty, as it is our inclination, to concede to the courts of the government of the United States the jurisdiction and powers to which they are justly entitled, we are in duty bound to claim for the courts exercising authority under the state government the full measure of jurisdiction and authority which pertain or belong to them. An appeal lies to this court from all final judgments, and also from certain interlocutory judgments, of the common pleas. 2 G. & H. 269, sec. 550, and page 277, sec. 576. It is made the imperative duty of this court to inquire into and correct the errors of the inferior courts of the State, from which appeals are taken to it, when properly presented. When, as in this case, an order has been made by one of such courts transferring a cause to the courts of the United States, courts of another and distinct government, or when such an order has been properly applied for and improperly refused, it would seem to be the duty of this court, on an appeal properly taken to it, to decide upon the correctness of such ruling. If the ruling is found to have been erroneous, it should be reversed. If it be found to have been correct, it would be the duty of this court to remand the cause to the inferior court, with instructions to carry out the order."

*Id.* at 175.

■ The same rationale applies to this case. The order of the Delaware Superior Court instructing Helwig to deliver his children to Wisconsin for further proceedings there was not an interlocutory order but was a final judgment since it decided all issues before that court involving the cause and the parties to it. It would be untenable to consider this cause interlocutory to the cause pending in Wisconsin. If the party opposing such order cannot appeal at this stage of the case, he can never appeal to this Court. No appeal is available to the Indiana appellate courts from a final judgment in Wisconsin and it certainly cannot be said that Helwig would have an opportunity to appeal to the Wisconsin courts to review the action of the Delaware Superior Court. Appellant Helwig has properly filed his appeal and we will consider the cause on its merits.

Action was brought in the Circuit Court of Oneida County, Wisconsin, by Matilda Anderson for custody of the two minor children. By order of the Oneida Circuit Judge in December, 1979, the children were placed in the custody of the Oneida County Department of Health and Social Services, pending the resolution of the custody litigation. The Oneida Circuit Court then undertook to make a determination of custody of the minor children. Appellant Helwig hired an attorney in Oneida County for the purpose of obtaining custody of his children pursuant to the order of the Blackford Circuit Court. After attending several hearings without satisfaction, Helwig removed his children from Wisconsin and failed to appear at any further hearings in Wisconsin. Matilda Anderson, through her attorneys, filed a request with Judge Kinney of the Oneida Circuit Court, requesting that he seek assistance from the Blackford Circuit Court in Indiana in requiring Helwig to return the children to Wisconsin. Rather than contact the Blackford Circuit Court, Judge Kinney sent the request to the Delaware Superior Court, the court of the county in which Helwig resided. The Wisconsin court purported to act under the Uniform Child Custody Jurisdiction Act, designated in Wisconsin statutes as Chapter 822. When Helwig received his notice to appear in the Delaware Superior Court, he immediately filed a Motion to Dismiss the Proceedings, alleging that the Delaware Superior Court had no jurisdiction over the subject matter of the action because: jurisdiction was in the Blackford Circuit Court; the order of the Blackford Circuit Court entered on December 13, 1978, awarding custody of Elaine and Lisa to Helwig, had not been modified, changed, or rescinded in whole or in part; the order still remained in full force and effect; and therefore the Delaware Superior Court had no jurisdiction to change or modify the order of the

Blackford Circuit Court. This motion was summarily denied.

At the hearing on August 25 in the Delaware Superior Court, there were no appearances for Matilda Anderson or for the Oneida Circuit Court. Response to the motion to dismiss had been made by Matilda Anderson's attorneys through the mail but no appearance was entered. The only people present were Helwig and his attorneys. The Delaware Superior Court found that under the Uniform Child Custody Jurisdiction Act it had no authority to inquire into the merits of the request made by the Oneida Circuit Court. Judge Barnet found that Helwig had voluntarily relinquished temporary custody of the children to the Oneida County Department of Public Welfare pursuant to a stipulation in an order filed with the Oneida Circuit Court and further found that pursuant to the stipulation and order, the Honorable Robert E. Kinney, Circuit Judge of Oneida County, had the authority to determine the custody of the minor children. These findings by the Delaware Superior Court were made based on the filing of the Findings and Conclusions of the Oneida Circuit Court, wherein Judge Kinney found that he had jurisdiction over the matter of the custody fight and further found that Helwig was in contempt of the Oneida Circuit Court's order by removing the children from Wisconsin and transporting them to Eaton, Indiana. Matilda's attorneys stated the following in their petition to the Wisconsin court:

\* \* \* \* \* \*

No. 10. To allow respondent to flout the jurisdiction of this Court and its orders and to so wrongfully remove the children from the jurisdiction of this Court, is not only a violation of the criminal statutes of the State of Wisconsin but makes the proceedings which have been initiated in this Court and carried out with much expenditure of time, effort and money of this Court, the parties and their attorneys, as well as the several departments of social services involved, a travesty."

In turn, the Delaware Superior Court found that Helwig was acting contrary to the order of the Oneida Circuit Court and that he should be ordered to return to the jurisdiction of the Oneida Circuit Court with the children within ten days. The Delaware Superior Court later found Helwig in contempt for his hesitancy in complying with this order. It is difficult to understand why the judges of the Oneida Circuit Court in Wisconsin and the Delaware Superior Court in Indiana were so willing to recognize the efficacy of their own orders and of each other's orders, and yet failed or refused to recognize the efficacy of the orders of the Blackford Circuit Court, which had original jurisdiction of this action. Both courts purported to act pursuant to the provisions of the Uniform Child Custody Jurisdiction Act, yet neither of them recognized the provisions of that Act. The orders of the Blackford Circuit Court were still in effect during all of these proceedings and that court had not relinquished its jurisdiction. The presence of the children in Oneida County, Wisconsin, was a result of Matilda Anderson's violation of that court order by removing the children first to Massachusetts and then to Wisconsin, necessitating a search by Helwig to locate the children and an attempt to obtain custody pursuant to the orders of the Blackford Circuit Court.

The Uniform Child Custody Jurisdiction Act is found in Indiana under Ind.Code § 31–1–11.6–1 *et seq.* (Burns Repl.1980) and in Wisconsin under Wis.Stat.Ann. § 822.01 *et seq.* (West 1977). The purpose and intent of the legislation is recognized by our courts and legislature to "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects to their well being." Ind. Code § 31–1–11.6–1. Additional reasons for adopting the Act, expressed in our statutes and in those of other states, are to deter abductions and other unilateral removals of children undertaken to obtain custody awards, to avoid relitigation of custody decisions of other states in this state insofar as feasible, and to facilitate the enforcement of custody decrees of other states. *Id.*

In *In re Lemond,* (1979) Ind.App., 395 N.E.2d 1287, the Court of Appeals, First District, found that where Hawaii was the home state of the parents and the child at the time the Hawaii court entered the custody decree, and the mother and child still lived in Hawaii, the Indiana court did not have the jurisdiction or the authority to modify the custody decree because the Hawaii court still retained jurisdiction. *Id.,* 395 N.E.2d at 1291. The father was living in Pike County, Indiana, and the child was visiting him on a temporary basis. Entry of judgment proposing to change the custody of the child by the Indiana court was found to lack jurisdiction since under the Uniform Act the court in Hawaii had not shown an intention to relinquish its jurisdiction. *See also Matter of Lemond,* (1980) Ind., 413 N.E.2d 228 (contempt proceeding in which the Supreme Court, Court of Appeals, First District, and Acting Chief Judge Staton of the Court of Appeals, presided). As the Court of Appeals pointed out in *In re Lemond, supra,* quoting *Fry v. Ball,* 190 Colo. 128, 544 P.2d 402 (1975):

> "The underlying policy of the Act is to prevent the desperate shifting from state to state of thousands of innocent children by interested parties seeking to gain custody rights in one state even though denied those rights by the decree of another state. The provisions of the Act seek 'to eliminate jurisdictional fishing with children as bait.' *Wheeler v. District Court,* 186 Colo. 218, 526 P.2d 658 (1974).

The Court of Appeals went on to state that "if the foreign court still has jurisdiction and substantive law permits modification of the custody decree, a local tribunal generally *must* defer. *See Woodhouse v. District Court In and For Seventeenth Judicial District,* 196 Colo. 558, 587 P.2d 1199 (1978)." 395 N.E.2d at 1290–91. *See also Green v. Green,* 87 Mich.App. 706, 276 N.W.2d 472. This Court also found that the Superior Court of Marion County had no jurisdiction to modify a child custody decree entered by a Texas court where the Texas court had jurisdiction to enter the original child custody order, had continuing jurisdiction at the time the action to modify was filed in the

Indiana court and had not declined to assume jurisdiction to modify its custody decree. *State ex rel. Marcrum v. Marion County Superior Court,* (1980) Ind., 403 N.E.2d 806.

A key point in all of the above cases was whether the court entertaining original jurisdiction of the custody decree had *relinquished* its jurisdiction or whether that custody decree was made under factual circumstances meeting the jurisdictional standards of the Act. *Marcrum, supra,* 403 N.E.2d at 809; *Campbell v. Campbell,* (1979) Ind.App., 388 N.E.2d 607, 608; *Woodhouse, supra,* 587 P.2d at 1201; *Fry, supra,* 544 P.2d at 406; *Green, supra,* 276 N.W.2d at 474; Ind.Code §§ 31–1–11.6–3(a)(4)(A), 31–1–11.6–13.

■ The Helwigs and their children lived in Indiana at the time the Blackford Circuit Court entered the custody order in 1977. Helwig continued to reside in Indiana after Matilda had secretly removed the children from Indiana, contrary to the order of the Blackford Circuit Court. Helwig filed the custody petition in the Blackford Circuit Court less than six months from the time the children were removed from Indiana, asking for change of custody based on the conduct of the mother. Matilda received notice of such hearing in Massachusetts before moving to Wisconsin, again without the knowledge or consent of anyone involved. The order of the Blackford Circuit Court on December 13, 1978, which granted custody of the minor children to Helwig and terminated the previous support order, concluded with the following: "That this matter is continued for further hearing upon request of the petitioner." Nothing has been shown in the record to indicate that the Blackford Circuit Court had relinquished its jurisdiction. It may well be that if the Oneida Circuit Court had contacted the Blackford Circuit Court, the latter would have agreed to relinquish its jurisdiction and the custody issue could have been settled in Wisconsin. However, that is a decision that only the Blackford Circuit Court can make; the Delaware Superior Court had no authority to act in this matter and should have transferred the cause to the Blackford Circuit Court.

■ It is Appellee's position that Helwig waived the question of jurisdiction and submitted to the jurisdiction of the Wisconsin court when he and his Wisconsin attorney signed the stipulation agreeing to submit the custody matter to the judge of the Wisconsin court. Helwig claims that he signed the stipulation on the advice of his attorney in Wisconsin who assured him that in signing this document he would put himself in a favorable position to obtain his children. He stated that he did not understand the legal implications of signing the document but took his attorneys' advice since that attorney and the prosecuting attorney assured him that after a matter of time and some formalities he would be able to take his children back to Indiana. Appellant's position is substantiated by demonstration of his conduct and the facts set out in the record. From the time the children were removed from the state, Helwig diligently searched for them, even to the extent of hiring a private detective agency to locate them in Massachusetts. He then was told by a judge there that he would have to file an action in the Massachusetts court in order to obtain custody of the children. He was armed with the judgment of the Blackford Circuit Court giving him custody when he appeared in Massachusetts to attend a hearing there. When the mother again absconded with the children, he continued his search until he located them in Wisconsin. His approach and attitude there was to enforce the order of the Blackford Circuit Court and obtain custody of his children and return with them to Indiana. Furthermore, under the Uniform Act, the legislature intended to prevent jurisdictional "shopping" by the parents. In other words, jurisdiction cannot be imposed on a foreign court by consent of the parents:

> "Pursuant [to the Uniform Act], the legislature has focused on the best interests of the child and imposed a duty on litigants and the court to satisfy jurisdictional hurdles before a trial court may wield its power. If such power could be conferred, as here, by the voluntary submission of the parties to a particular forum, the legislative intent could be sub-

verted and consideration of the best interest of the child accorded incidental weight."

*Campbell, supra,* 388 N.E.2d at 610.

Transfer is granted, the opinion of the Court of Appeals is vacated, and this cause is accordingly remanded to the Delaware Superior Court with orders to strike all of its judgments and orders in this cause and transfer the cause to the Blackford Circuit Court.

GIVAN, C.J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents with separate opinion.

## ON PETITION TO TRANSFER

DeBRULER, Justice, dissenting.

According to the findings of the Delaware Superior Court, the Wisconsin court made an explicit determination of its jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act *in its order granting* temporary custody of the children to the Wisconsin Welfare Department. When this Wisconsin order was filed in the Delaware Superior Court, it was to have the same effect and was to be enforced in like manner as a custody decree rendered by a court of this State. Ind.Code § 31–1–11.6–15. The order is regular on its face, and as such constitutes at least a prima facie showing that the Wisconsin court made a valid determination of its own jurisdiction in compliance with the Act. Accordingly, the burden in the Delaware Superior Court rested with the party who resisted enforcement of the order to prove that such determination of jurisdiction was invalid. *Irons v. Irons,* (1962) 242 Ind. 504, 180 N.E.2d 105. In order to carry that burden in this case the resisting party had two courses. It could show both that the Blackford Circuit Court which made the initial determination of custody has not declined jurisdiction, and that the Blackford Circuit Court still retains jurisdiction under the jurisdictional prerequisites of the Act, *or* it could show that the Wisconsin court did not have the

jurisdictional prerequisites of the Act. Ind. Code § 31–1–11.6–14. I would hold in this case that appellant did not successfully sustain his burden in resisting enforcement of the Wisconsin order before the Delaware Superior Court. The first of these alternative burdens was not met, because appellant showed only that the Blackford Circuit Court had not declined jurisdiction and did not address the issue of whether the Blackford Court maintains the jurisdictional prerequisites of the Act. The second of these alternative burdens was likewise not addressed. It would appear plainly here that even though the mother absconded with the children to Massachusetts and then on to Wisconsin in contravention of the Indiana order, *the interests of the children,* when viewed at that point in time when the Wisconsin court was required to determine its jurisdiction, were such as to require that court to act. Ind.Code § 31–1–11.6–8.

I would affirm the enforcement judgment of the Delaware Superior Court as I see no impingement or invasion by it upon the Blackford Circuit Court's legitimate authority as that is delineated in the Act.