In re the CUSTODY OF William Allen COX, Jr. and Joseph Issac Cox, Minor Children.
William Allen COX, Sr., Appellee (Petitioner Below),
v.
Ada R. LEWIS, Appellant (Respondent Below).
No. 57A03–8810–CV–326.
Court of Appeals of Indiana,
Third District.
April 5, 1989.

■

3. *Blockburger v. U.S.* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306.

Rita Parsons, Legal Services Program of Northern Indiana, Inc., South Bend, Ind., for appellant.

Michael M. Yoder, S. Michele Schaefer, Emerick & Diggins, P.C., Kendallville, Ind., for appellee.

STATON, Judge.

Ada R. Lewis brings this interlocutory appeal to challenge an order entered in the Noble Circuit Court denying her motion to dismiss.[1] The motion was tendered in response to the trial court's grant of a Verified Petition for Emergency Modification of Child Custody filed by Lewis's former husband, William A. Cox. Lewis contends on appeal that the trial court erred in determining that it possessed subject matter jurisdiction to modify a Kentucky child custody decree.

Reversed and remanded.

The marriage of William Cox and Ada Lewis was dissolved on August 6, 1984 in the Morgan Circuit Court, Morgan County, Kentucky. Under the dissolution decree, Lewis was awarded custody of the couple's two minor children while Cox received visitation rights. Since her divorce from Cox, Lewis has continually resided in Kentucky with her children. Cox now lives in Noble County, Indiana.

In March of 1988, Cox assumed temporary custody of both children by mutual agreement of the parties. The purpose of the temporary change of custody was to provide for the special educational needs of one of their children which could not be met in the Kentucky school system. Pursuant to the agreement, both children were enrolled in the Noble County school system for the remainder of the 1987–1988 school year and returned to Lewis at the completion thereof.

On September 16, 1988, Cox was informed by a Kentucky social worker and one of Lewis's relatives that Lewis had left her children with her current husband several days earlier, that her whereabouts were unknown, and that his children wished to speak with him. Cox drove to Kentucky the next day and located his children at their grandmother's house. Cox then met with Lewis's husband and other members of her family, none of whom had information concerning where Lewis was or how she could be reached. With the assistance of Lewis's family and husband, Cox gathered his children, packed their clothing and brought them to his home in Indiana. The children have since resided with their father and attended school in Noble County.

On September 22, 1988, Cox filed a petition in the Noble Circuit Court seeking an emergency temporary modification of child custody. No steps were taken to modify custody in Kentucky. The trial court immediately issued an *ex parte* order granting Cox's petition and further ordered Lewis to appear before the court and show cause why the 1984 Kentucky child custody decree should not be modified. Lewis responded one week later with a motion to dismiss for lack of subject matter jurisdic-

1. Indiana Rules of Procedure, Appellate Rule 4(B)(6).

tion.[2] Thereafter, the trial court scheduled a hearing to allow the parties to present evidence concerning the jurisdiction issue.

At the conclusion of the hearing, the trial court entered its findings as follows:

\* \* \* \* \* \*

3. The Petitioner has been a resident of the State of Indiana for a period of time prior to March of 1988, and pursuant to I.C. 31-1-11.6-3(a)(2), the Court finds that it is in the best interest of the children that this Court assume jurisdiction because the Petitioner, one of the contestants, has a significant connection with this State in that he is a resident here and the children are presently here on the basis of members of the Respondent's family requesting that the Petitioner provide for the children, and he has placed them in the same school system they were in previously, which placement was previously agreed upon by the Petitioner, and the Respondent as being in the best interest of the children for educational benefits, and the Court finds further that there is available in this State evidence concerning the children's present and future care, protection, training, and personal relationships.

4. Pursuant to the evidence the Court has heard and the above Findings, which are reflected by the evidence, the Court finds that the Respondent's Motion to Dismiss should be denied and this cause should continue pending here for the purpose of allowing the parties and this Court to secure additional information to determine this Court's jurisdiction under the Uniform Child Custody Jurisdiction Act.

\* \* \* \* \* \*

(R.1: 14-16.)

Thereafter, Lewis brought this interlocutory appeal seeking a resolution to the issue of whether the Noble Circuit Court exercised jurisdiction in this case in contravention of the Uniform Child Custody Jurisdiction Act (hereinafter referred to as "the Act"). We conclude that it did.

There are several means by which to acquire jurisdiction under the Act, most notably by meeting the requirements of either the "home state" or the "significant connections" tests outlined in Section 3. West's AIC 31-1-11.6-3(a)(1), (2). These provisions are designed with a flexibility which often results in the existence of jurisdiction over a child custody dispute in more than one state. *Brokus v. Brokus* (1981), Ind.App., 420 N.E.2d 1242, 1247. This particular phenomenon is not without a compelling purpose. By creating several places of initial jurisdiction, the Act seeks to promote the best interests of children involved in custody disputes by ensuring that their cases are decided in courts which have the greatest access to relevant information. IC 31-1-11.6-1(a)(2), (3); *Moody v. Moody* (1986), Ind.App., 488 N.E.2d 378, 381. However, the Act further seeks to avoid jurisdictional conflicts between states which in the past have "resulted in the shifting of children from state to state with harmful effects on their well-being." IC 31-1-11.6-1(a)(1). To this intent, the Act is also designed so that jurisdiction is only the first of several hurdles a court must clear before it may exercise what jurisdiction is conferred pursuant to Section 3.

The case before us is a prime illustration of jurisdiction which exists but may not be exercised. The trial court in this case determined that Indiana has jurisdiction over this child custody dispute via the "significant connections" test.[3] We do not dispute its findings in this regard. However, the trial court failed to take the next step of

---

**2.** Indiana Rules of Procedure, Trial Rule 12(B)(1).

**3.** IC 31-1-11.6-3 states:
(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

\* \* \* \* \* \*

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

considering separate sections of the Act placing restrictions on the exercise of its jurisdiction. Stated succinctly, "once a custody decree has been rendered in one state, jurisdiction is determined by sections 8 and 14." *State ex rel. Marcrum v. Marion County Superior Court, Etc.* (1980), 273 Ind. 222, 403 N.E.2d 806, 810; *citing* National Conference of Commissioners on Uniform State Laws, Note to U.C.C.J.A. § 6 (1968), 9 U.L.A. 134, 135 (1979).

Section 8 of the Act is a discretionary provision inapplicable to the fact pattern before us. *See* IC 31–1–11.6–8. However, Section 14 is a mandatory provision specifically addressing the jurisdictional priorities attendant to the modification of a foreign child custody decree. Therein it is stated:

> If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.

IC 31–1–11.6–14(a); *See also, State ex rel. Marcrum, supra,* at 810, 403 N.E.2d 806.

To summarize, this statutory scheme requires that Indiana refrain from modifying a child custody decree entered in another state which: had jurisdiction at the time the decree was entered; has continuing jurisdiction at the time the action to modify is filed in this state; and, provides for the right to modification. *Id.,* at 811, 403 N.E. 2d 806; *In re Lemond* (1979), 182 Ind.App. 626, 395 N.E.2d 1287, 1291, *trans. denied.* The law is such that there can be no concurrent jurisdiction under Sections 14 and 3

of the Act. It is intended that the court of origin retain exclusive, continuing jurisdiction until such time as it decides to relinquish the same. *Funk v. Macaulay* (1983), Ind.App., 457 N.E.2d 223, 226. (Citations omitted.)

With the foregoing in mind, we turn to the question not properly addressed by the trial court in its findings: whether Kentucky meets the prerequisites for continuing, exclusive jurisdiction set forth in Section 14 of the Act? We conclude that it does. Kentucky adopted the Act in 1980. *See,* Kentucky Revised Statutes 403.400 *et seq.* It had jurisdiction over the initial custody decree rendered in 1984 by virtue of the Act's "home state" test.[4] Both children had been born and lived the entirety of their lives in Kentucky at the time of their parents' divorce. Kentucky also had jurisdiction at the time Cox filed for modification of the Kentucky decree in Indiana. But for the several months in 1988 spent in Indiana for educational purposes and the months which have passed since the dispute before us began, the Cox children have continually lived in Kentucky. Lewis continues to live in Kentucky. We have previously concluded that, "a state which would satisfy the home state test except for the children's absence retains jurisdiction for an additional six months if a parent continues to reside in that state." *Matter of Guardianship of Mayes* (1988), Ind. App., 523 N.E.2d 249, 251; *citing In re Marriage of Hudson* (1982), Ind.App., 434 N.E.2d 107, 115, *cert. denied* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433. (Emphasis omitted.)

Kentucky also meets the "significant connections" test of IC 31–1–11.6–3(a)(2), *supra.* Testimony elicited at the jurisdiction hearing established that the Cox chil-

---

4. IC 31–1–11.6–3 provides:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention

by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

IC 31–1–11.6–2(5) defines "home state" as:

... the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months ... Periods of temporary absence of any of the named persons are counted as part of the six (6) month or other period.

dren have numerous relatives living in Kentucky, including both grandmothers, that their school records were still located in Kentucky, and that they have a social worker also located in Kentucky. Court records concerning the initial dissolution and custody decree remain in Kentucky. Thus, under the Act, Kentucky meets at least two of the four means by which to acquire jurisdiction. Finally, it is clear that Kentucky provides for modification of its child custody decrees, thereby fulfilling the last requirement of a Section 14 analysis. *See*, Kentucky Revised Statutes 403.340.

The initial focus of the jurisdiction hearing in this case was whether Indiana had emergency jurisdiction pursuant to IC 31–1–11.6–3(a)(3). It is clear to this court that, although the trial court entered no jurisdictional findings when it entered its first emergency temporary change of custody order, it was on the strength of this provision that it issued the same. However, the court specifically stated at the hearing that it was invoking jurisdiction under Section 3(a)(2) in continuing its temporary modification. On appeal, Cox continues to argue that Indiana has jurisdiction pursuant to Section 3(a)(3) of the Act because Lewis "abandoned" the children.[5]

Cox argues that, where a state meets the Section 3(a)(3) emergency or abandonment provisions, Section 14 of the Act no longer controls jurisdiction. We have not been given nor do we find authority in support of this contention. Regardless, it is the Section 3(a)(2) jurisdictional finding that we concern ourselves with here. The trial court in this case implicitly held that "abandonment" was not among its findings in this case, stating, "The decision is based on Section 2 [ (IC 31–1–11.6–3(a)(2) ]. I'm not talking about an emergency or abandonment ..." (R. 2: 123). Having read the evidence of "abandonment" in this case, i.e., that Lewis left her children with their stepfather for three days without notice of

her whereabouts, we are persuaded that the trial court's implicit determination on this issue was correctly rendered. Further, there was no evidence of neglect, and since the children were in Cox's custody when he initiated these proceedings, an emergency cannot be inferred. *See, Brokus v. Brokus, supra* at 1248.

Regardless of the jurisdictional result reached in this case, we remain sharply aware of the fact that it is the children involved who will be most affected by its outcome. "When a factual situation presents an irreconcilable conflict between promoting the orderly system of decisions and protecting the best interests of the child before the court, the Act makes predominant the best interests of the child." *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23, 33. (Citations omitted.) We are mindful that the Cox children have been enrolled in the Noble County school system since September and retain significant concerns over the fact of Lewis's temporary disappearance without apparent regard for the well-being of her children. We see no purpose that would be furthered by uprooting these children for a second time in the space of one school year when the possibility exists of a third displacement, should Kentucky assume jurisdiction and modify custody in favor of Cox. As a result, we conclude that the best interests of the Cox children dictate that they remain with Cox until such time as the Kentucky courts have taken final action on a petition for modification. We use the equity powers of this court to order the same. However, we also require that Cox diligently pursue modification of the child custody decree in Kentucky. Should Cox fail to notify the Noble Circuit Court within ten days from the certification of this opinion to the trial court of his intention to seek modification in Kentucky, or fail to file his petition for modification in Kentucky within thirty days after filing his notice of intent, this court's

---

5. IC 31–1–11.6–3 provides:
(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

     *    *    *    *    *    *

(3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

temporary order of custody will expire and the children ordered returned to their mother.[6]

Reversed.

GARRARD, P.J., concurs in part and dissents in part with opinion.

NEAL, J., concurs.

GARRARD, Presiding Judge, concurring in part and dissenting in part.

Although I am compelled to dissent to the exercise of equitable jurisdiction by this court after its correct determination that the trial court was without authority to modify the Kentucky child custody award, I write largely to draw attention to three additional considerations in interstate custody disputes such as this.

No one in this lawsuit recognized the existence or applicability of the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. While the PKPA is similar in approach to the UCCJA, IC 31–1–11.-6–1 et seq., it prohibits a forum state from exercising jurisdiction on the basis of the significant connection test so long as another state continues to have jurisdiction under the home state test. 28 U.S.C.A. § 1738A(c)(2)(B)(i); *see Thompson v. Thompson* (1988), 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512. Under both PKPA and UCCJA the trial court in the absence of emergency circumstances lacked jurisdiction to modify custody.

Secondly, both acts permit a forum state (provided it possesses a jurisdictional basis) to consider modification of a custody award if the court which made the prior award and which still has a jurisdictional basis declines to exercise its jurisdiction. Both the Indiana (IC 31–1–11.6–7) and Kentucky (KRS 403.460) versions of the UCCJA permit their courts to decline to exercise jurisdiction on the ground of inconvenient forum. Pursuant to the act, parties confronted with a jurisdictional dilemma may apply to the court and seek utilization of the most convenient forum.

Thirdly, the provisions dealing with a court's determination to decline to exercise its jurisdiction on grounds of inconvenient forum authorize a *sua sponte* determination by the court and expressly encourage one court to communicate directly with the other to determine which court should be the appropriate forum. The interests of the parties, judicial economy and, most especially, the best interests of the children would be well served by utilization of the inconvenient forum procedures available under the UCCJA, including that of one judge simply telephoning the judge in another state to determine whether they can agree on the most appropriate forum.

Finally, I fully sympathize with the majority view that the children's best interests would be served by allowing them to remain enrolled in their present school for the balance of the term and would urge the parties to agree to that arrangement without prejudice to their rights at a subsequent modification hearing, be it held in Indiana or Kentucky. Nevertheless, I am unable to concur in the majority's disposition because I can find no basis for the exercise of our inherent equity power. There is nothing in the record to support a finding of an emergency basis for exercising jurisdiction. We have determined that the trial court was without authority to enter its order modifying the Kentucky custody order. We should, therefore, simply reverse and remand for such further proceedings as may be necessary consistent with our decision.

---

6. For similar disposition, *See, Fry v. Ball* (1975), 190 Colo. 128, 544 P.2d 402.