537 P.2d 1092 (1975)
In re the CUSTODY OF David J. GLASS. James GLASS, Petitioner-Appellee, and
Cheri GLASS, Respondent-Appellant.
No. 74-459.
Colorado Court of Appeals, Div. III.
May 6, 1975.
Rehearing Denied May 28, 1975.
Walta, Cannon, Gaddis & Kin, Joe A. Cannon, Colorado Springs, for petitioner-appellee.
Lawrence E. Addy, John G. Otto, Colorado Springs, for respondent-appellant.
Selected for Official Publication.
VanCISE, Judge.
Respondent Cheri Glass (Cheri), the mother, appeals from an order awarding custody of her three-year-old child, David, to petitioner James Glass (James), the father. The order appealed from was entered in a proceeding instituted in Colorado 19 months after Cheri had obtained an order awarding her the custody of David in a California dissolution of marriage proceeding. We reverse.
Cheri and James, lifelong residents of California, were married there in 1970, James entered the military service from there in January 1971, and David was born there June 24 of that year. In the spring *1093 of 1972, James sued for dissolution of marriage in the Superior Court of Mendocino County, California; Cheri filed a counterpetition; and on October 12, 1972, the California court granted an interlocutory decree. In that decree, made final January 3, 1973, the court awarded custody of David to Cheri, with reasonable rights of visitation in James.
In June of 1972, James was transferred from Viet Nam to Ft. Carson, Colorado, and he remained in Colorado Springs after his discharge in 1974. He remarried in April of 1973, and there is now a child of that marriage. David remained with Cheri or his grandparents in California until February 8, 1974, when, by prearrangement, Cheri brought him to Colorado and delivered him to James. The evidence conflicts as to whether Cheri merely left him for a visitation of a few weeks, or whether she told James that she had failed to provide David the home he really needed, and that now it was James' turn to care for him.
After David had been with James for about ten weeks, Cheri heard through the grandparents that James planned to ask for permanent custody. On April 22, she called James to advise him she would be coming for David in two or three weeks. On April 25, James verified the petition for custody which was filed with the district court in El Paso County on May 8. Two weeks later, Cheri arrived and picked up David at the home of his stepmother's parents in Florence, Colorado. On May 23, copies of the summons, the custody petition, and a temporary restraining order and motion and order therefor, were served on Cheri at the Stapleton Airport in Denver as she and David were about to board a plane to California. Pursuant to that order, David was returned to James. He has remained with his father continuously thereafter except for local visitation with Cheri who has remained in Colorado during this litigation.
Cheri, in her response to the petition, asked for custody, and moved to dismiss the temporary restraining order because it violated the Uniform Child Custody Jurisdiction Act, § 14-13-101 et seq., C.R.S.1973 (hereinafter termed the Uniform Act, with sections thereof to be referred to by section number only). By order entered July 29, 1974, after a two-day hearing, the court concluded that it had jurisdiction under the Uniform Act and that the Colorado court "need not make a modification of the California decree in that respondent acted to modify the decree by a voluntary relinquishment of the child by the respondent to the petitioner" on February 8, 1974. It found that neither party is unfit, but that it is in the best interest of David for James to have permanent custody of David. The court then awarded custody to James, directed that it would continue supervision of the parties, and awarded liberal rights of visitation to Cheri in Colorado.
The issue in this case is whether under the Uniform Act the trial court had jurisdiction, or should have exercised jurisdiction, to rule on the merits of the petition for David's permanent custody, when, less than two years before, a California court of competent jurisdiction had by decree awarded custody to the mother.
This action was commenced in 1974 when the Uniform Act had been in effect for less than a year. To the date of this opinion, the Colorado Supreme Court has decided only two cases under that Act, Wheeler v. District Court, Colo., 526 P.2d 658, and Nelson v. District Court, Colo., 527 P.2d 811. In Wheeler, the court issued a writ of mandamus requiring the trial court to conduct a hearing on the father's petition to modify an earlier ex parte order in Illinois granting custody to the wife. There, by Illinois decree, the children had been with the father for five years until the order was changed ex parte four months before the Colorado action. The last year had been spent in Colorado with Illinois court permission.
In Nelson, both parents after their divorce in Oklahoma had moved to and were now domiciled in Colorado. The child was *1094 in this state merely to visit his mother and was a resident of Montana where he lived with a non-parent who had been awarded his custody by the Oklahoma decree. The court, with three Justices vigorously dissenting, held that the trial court had jurisdiction under § 104(1)(b) to hear the mother's petition for change of custody to her.
Neither case is dispositive of and both are distinguishable from the case at bar. In both Wheeler and Nelson, the states which had entered the original decrees would not have had custody determination jurisdiction under the Uniform Act.
As stated in Wheeler v. District Court, supra:
"The Uniform Child Custody Jurisdiction Act evolved from the growing public concern that thousands of children are shifted from state to state while their parents battle over custody. The harm to these children is enormous. They have little chance to develop a sense of belonging or close personal attachments, so essential in the formative years. The underlying policy of the entire Act is to eliminate jurisdictional fishing with children as bait. To give the Act any teeth, this policy must be uppermost when construing the statute." See also § 101.
In an effort to solve the problem, the Uniform Act attempts to limit custody determination jurisdiction to only one state. Section 104(1) confines subject matter jurisdiction to: (a) The home state of at least one parent, and of the child for the last six months; or (b) the state where there are other strong contacts with the child and his family and it is in the child's best interest; or (c) the state where the child is present if the child has been abandoned, or if there is an emergency case of child neglect; or (d) the state of the forum if it is in the child's best interest and no other state could or would assume jurisdiction. Exercise of parens patriae jurisdiction (§ 104(1)(c)) is reserved for extraordinary circumstances. See 9 Uniform Laws Annotated, Uniform Child Custody Jurisdiction Act, Commissioners' Prefatory Note and Commissioners' Note to § 3.
The Uniform Act establishes additional conditions and restrictions before Colorado courts can modify existing foreign custody decrees. "[T]he courts of this state shall recognize and enforce" a decree of a court of another state, § 114, and "shall not modify that decree unless it appears to the court of this state [1] that the court which rendered the decree does not now [as of the date of the petition] have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or [2] has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction." Section 115(1).
Under its local law, California retains continuing jurisdiction to modify its custody decrees. See Ferreira v. Ferreira, 9 Cal.3d 824, 109 Cal.Rptr. 80, 512 P.2d 304. Furthermore, on the date the Colorado petition was filed here, the Uniform Act was operable in California. On that date, Cheri was still a domiciliary of California; David's home state under the Uniform Act was and is still California; and, for all but the last three months before the petition was filed, he lived with his mother and grandparents in California and he had only minimal contacts with Colorado. Therefore, California had jurisdiction to make a custody determination under the Uniform Act. Hence, by virtue of § 115(1), the Colorado court may not modify the existing California custody decree, and James's petition for custody in May 1974 should have been addressed to the Superior Court of Mendocino County, California.
The judgment is reversed and the cause is remanded with directions to dismiss the action.
RULAND and STERNBERG, JJ., concur.