No. 26971

**Richard Dee Fry and Norma Jean Fry v. The Honorable Conrad L. Ball, District Court Judge**

(544 P.2d 402)

Decided December 29, 1975.

Bye & Gascoyne, David Bye, for petitioners.

Roy M. Wittstruck, for respondent.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

Petitioners, the natural parents of the minor child, Scott Tracy Fry, instituted this original proceeding seeking to enjoin respondent from exercising jurisdiction under the Uniform Child Custody Jurisdiction Act. Section 14-13-101, *et. seq.*, C.R.S 1973. A rule to show cause issued and we now make the rule absolute.

On November 14, 1972, Gwendolyn L. Fry, Scott's paternal grandmother, was appointed his guardian by the Superior Court of Orange County, California.[1] The petitioners consented to the appointment, because the father was in a California jail awaiting extradition to Oregon on charges of selling narcotics, and the mother was an outpatient in a heroin addiction clinic. At the time of the appointment, Scott was seventeen months of age, and petitioners and the paternal grandparents were domiciliaries of California.

In September, 1974, petitioners learned that the grandparents had sold their home and were planning to return to Colorado where they had once lived. On September 6, 1974, petitioners procured a temporary restraining order from the Superior Court which prohibited the guardian from leaving California with Scott. However, the grandparents left California before the order was served upon them. The guardian, however, failed to obtain the prior consent of the Superior Court to establish domicile in Colorado with the child, in violation of section 1500 of the California Probate Code.[2] The guardian maintains that her failure to seek court permission was not intentional, but due to ignorance of California law.

On November 18, 1974, the guardian's attorney in Colorado wrote a letter to petitioners explaining that the guardian planned to seek permission of the Superior Court for a change of domicile. However, the record does not indicate that the guardian actually sought permission.

On April 3, 1975, almost seven months after Scott was taken from California by the guardian, the parents filed a petition in the Superior Court seeking termination of the guardianship. The guardian was personally served in Colorado on May 5, 1975, and on May 21, 1975, she appeared by counsel at a hearing in the Superior Court on the merits of the petition. On June 3, 1975, the Superior Court entered a decree returning custody of Scott to petitioners and terminating the guardianship because

---

[1] Hereinafter referred to as "Superior Court."

[2] §1500 provides in part: "The guardian of the person of a ward may fix the residence of the ward at any place in the State, but not elsewhere without the permission of the court."

"there no longer appears to be any necessity for the continuation of the guardianship." The court also found the guardian to be in violation of § 1500 of the California Probate Code.

Pursuant to this decree, petitioners arrived in Colorado to pick up Scott and return to California. Although the guardian was prepared to surrender the child, Scott was not willingly relinquished due to the haste with which the father sought to remove the child. A scuffle ensued between the grandparents and the natural parents which resulted in the arrest of the parents and the filing of assault charges against them.

Shortly after the alleged assault, the grandparents filed a petition in the District Court of Larimer County for a determination of Scott's custody. The district judge granted an *ex parte* order restoring physical custody of Scott to the grandparents and enjoining petitioners from any further contacts with the grandparents. Petitioners' motion to dissolve the *ex parte* order was denied, and a date for the hearing on the merits was set. Petitioners then commenced this proceeding. Scott is presently in the physical custody of the grandparents in Colorado.

I.

The issue framed by this case is whether under the foregoing circumstances the Uniform Child Custody Jurisdiction Act[3] requires that the Colorado court recognize and refrain from modifying the California child custody decree entered on June 3, 1975. We believe the Act requires that the Colorado court defer to the jurisdiction of the California court.

The underlying policy of the Act is to prevent the desperate shifting from state to state of thousands of innocent children by interested parties seeking to gain custody rights in one state even though denied those rights by the decree of another state. The provisions of the Act seek "to eliminate jurisdictional fishing with children as bait." *Wheeler v. District Court*, 186 Colo. 218, 526 P.2d 658 (1974).

An overview of the structure demonstrates the statutory concepts utilized to accomplish the objectives of the Act:

"First, one court in the country assumes full responsibility for custody of a particular child. Second, for this purpose a court is selected which has access to as much relevant information about the child and family in the state as possible. Third, other essential evidence, which is inevitably out-of-state in the case of an interstate child, is channelled into the first court which might be called the 'custody court.' Fourth, other states abide by the decision of the custody court and enforce it in their territory, if necessary. Fifth, adjustments in visitation and other ancillary provisions of the decree, and custody changes, if any, are as a rule made by the original

---

[3] Section 14-13-101, *et. seq.*, C.R.S. 1973 (hereinafter referred to by section number of "the Act").

custody court. Sixth, if the child and his family no longer have appreciable ties with the state of the original court, a new custody court is selected to take the place of the original one for purposes of adjustments and modifications, and pertinent information is channelled from the prior to the subsequent custody court." Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand. L.Rev. 1207, 1218 (1969).

■ Under this statutory scheme, it is a basic principle that a custody decree rendered by the court of one state, which had jurisdiction at the time the decree was entered, is entitled to recognition by all other states. In this light, section 114 of the Act provides:

"The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this article or which was made under factual circumstances meeting the jurisdictional standards of the article, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this article."

A corollary principle is that if the state which rendered the custody decree still has jurisdiction, other states cannot modify the decree. In this regard, section 115 of the Act states in part:

"(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction." Section 14-13-115, C.R.S. 1973.

■ Thus, under these two sections, a Colorado court must recognize and refrain from modifying a custody decree of another state where the sister state had jurisdiction at the time its decree was entered and has continuing jurisdiction at the time the action to modify is instituted in this state. *See In Re Custody of Thomas,* 36 Colo.App. 96, 537 P.2d 1095 (1975); *In Re Custody of Glass,* 36 Colo. App. 91, 537 P.2d 1092 (1975). As California has adopted the Uniform Act,[4] we must determine the existence or absence of jurisdiction under its version of the Act.

■ California generally retains continuing jurisdiction to modify its custody decrees under its local law. *Ferreira v. Ferreira,* 9 Cal.3d 824, 512 P.2d 304, 109 Cal.Rptr. 80 (1973); *See In Re Custody of Glass, supra.* In order to determine if, in an interstate setting, California had jurisdiction and retained it at the time the grandparents instituted their action in Colorado, we must examine section 5152(1)(b) of the California

---

[4] California Civ. Code § § 5150-5174 (1975 Supp.).

Civil Code (1975 Supp.), which provides that a California court has jurisdiction if:

"It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

■ In this case, both of the natural parents were domiciliaries of California. This is sufficient to establish a "significant connection" with the state. *See Nelson v. District Court*, 186 Colo. 381, 527 P.2d 811 (1974). The child was a California domiciliary from the time of his birth until September, 1974, which was almost three of his four years of life. His guardianship was determined under a California decree, the modification of which by the same court has triggered this action. The various social agencies in Orange County, California, have accumulated a great deal of information regarding Scott, the status of his parents, and the past records regarding his guardianship. We believe these facts support a finding that California had jurisdiction at the time of the modification decree, and retained that jurisdiction at the time the grandparents' petition was filed in Colorado.

The Act attempts to limit "custody determination jurisdiction to only one state," *In Re Custody of Glass, supra*, and sections 114 and 115 reflect a general policy which favors the continuing jurisdiction of the court rendering the original custody decree. Uniform Laws Annotated, Uniform Child Custody Jurisdiction Act § 15, *Commissioner's Note; Bodenheimer, supra*. Thus, even though Colorado may also have jurisdiction under section 104 of the Act, it must defer to the California court under the facts of this case.

## II.

The general purposes of the Uniform Act include cooperation between courts of different states which will lead to an informed decision on custody. Under section 102, these purposes are to:

"(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effect on their well-being;

"(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

. . . .

"(g) Facilitate the enforcement of custody decrees of other states;

"(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; . . . ."

Generally, in a child custody proceeding the local petitioner is at a distinct advantage, not due to any bias but because of the unbalanced presentation of evidence before the judge. *Bodenheimer, supra.* It is often the petitioner's own story and his own witnesses which constitute the evidence upon which a judge must base his decision. The out-of-state respondent frequently cannot muster his sources of information before the custody court due to the expense of transportation over long distances.

The Act, through its interstate information scheme, attempts to counteract this local advantage. The result benefits all parties, especially the child, because the custody decision will hopefully reflect a fully informed judgment under the Act.

The custody court may order the appearance of a custodian, other interested party, or the child, and may order that the expenses be borne by another party.[5] "In addition to other procedural devices available to a party," a party may depose a witness, including parties and the child, in another state, and this may be done *sua sponte.*[6] The custody court may request the court of another state to conduct a hearing, to order a party to give evidence in that state, or to order the preparation of social studies, and the written results of all these requests may be forwarded to the custody court.[7] The custody court may request the court of another state to order the appearance of a party and the child in the custody court.[8]

Although we do not have the record of the hearing on the parents' petition to modify the original custody decree conducted in the Superior Court on May 21, 1975, we are aware from the present record that the grandparents and Scott did not testify personally or by deposition. It is true that the guardian appeared by counsel, and that counsel cross-examined the witnesses, but we fear that not all relevant evidence was before the Superior Court which terminated the guardianship. Specifically, we note the alleged assault upon the grandparents. Even more importantly, we call attention to the comments made by Scott to a psychologist in August of this year, where the child expressed openly his fear that he might have to leave "with the bad guy" and not be able to stay with his grandmother. The psychologist observed the child's dependence on his grandmother, whom he called "Mom" and "Honey," and that "reunion with the grandmother [after the interview] brought immediate relaxing and very happy spontaneous interaction."

■ We believe that these facts might now be significant considerations for the Superior Court in deciding this custody case, and that its

---

[5] Section 112.
[6] Section 119.
[7] Section 120(1).
[8] Section 120(2).

judgment may be different if this information is presented at a new hearing. Although we reiterate our belief that the California court has continuing jurisdiction of this matter, these significant facts raise a genuine concern for Scott's welfare. We, therefore, conclude that it is proper for this court under its equity powers to permit Scott to remain in the temporary custody of Gwendolyn Fry, pending the institution and disposition of a petition addressed to the Superior Court of Orange County, California, requesting a modification of its custody decree entered on June 3, 1975. *See, e.g., Zillmer v. Zillmer,* 8 Wis.2d 657, 100 N.W.2d 564, 101 N.W.2d 703 (1960)[9] (modified on motion for rehearing).

We hold that Gwendolyn Fry, as guardian under the California decree preceding the decree entered on June 3, 1975, should be permitted an opportunity to seek modification of the decree of the Superior Court terminating her guardianship. Therefore, if, within ten days from the issuance of this mandate, Gwendolyn Fry files with respondent court, the District Court of Larimer County, Colorado, a written notice of her intention to petition the Superior Court for modification, she will be granted an additional forty days within which to actually file her petition for modification with the Superior Court. During this period, Scott shall remain in the temporary custody of Gwendolyn Fry, and shall continue in her custody until the California courts have taken final action on the modification petition. If, however, Gwendolyn Fry fails to file her written Notice of Intention to petition the Superior Court within the time provided, or she fails to file her petition with the Superior Court within the time provided, or she fails to diligently prosecute the petition for Modification in the Superior Court, the respondent shall dissolve this court's temporary order of custody.

Upon proper notification that the California courts have taken final action on the modification petition, respondent shall recognize the resulting decree. The courts of this state stand ready to aid the Superior Court, consistent with the letter and spirit of the Uniform Child Custody Jurisdiction Act.

The rule is made absolute, subject to the foregoing conditions, and the cause is remanded for further proceedings not inconsistent with this opinion.

MR. JUSTICE DAY, MR. JUSTICE LEE and MR. JUSTICE ERICKSON concur in the result.

---

[9] In a very similar factual situation, the Wisconsin Supreme Court in *Zillmer* referred the matter to the foreign state which had jurisdiction over the case to enable the foreign court to have the benefit of the testimony of a medical witness which noted that the custodian under the foreign decree was a "psychotic."