TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00638-CV

NO. 03-01-00639-CV






Manuel E. Saavedra, Appellant


v.


Debra Kay Schmidt, Appellee


&


Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NOS. FM004275 & FM001272, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING






 This jurisdictional dispute between two sister state courts over a custody
determination falls squarely within the Uniform Child Custody Jurisdiction and Enforcement Act
(the UCCJEA). (1) See Tex. Fam. Code Ann. §§ 152.001-.317 (West 2002). Custody proceedings
were initiated in the superior court of California, San Joaquin County (the California court) in 1993
when appellee Debra Kay Schmidt filed for separation and then for divorce from appellant Manuel
E. Saavedra. Initially, Schmidt was awarded physical custody of the children, while Saavedra was
granted only supervised visitation. Years later, Schmidt fled to Texas with the children in violation
of the California court's orders. Incensed by Schmidt's conduct, the California court awarded sole
legal custody of the children to Saavedra, a convicted child molester who had never enjoyed
unsupervised visitation with the children; it further ordered no contact between Schmidt and the
children. Following a series of legal proceedings and allegations of unseemly conduct by the parents,
the Texas Department of Protective and Regulatory Services involved itself in the dispute. A Texas
court assumed temporary emergency jurisdiction and entered temporary orders regarding the
placement of the children. See id. § 152.204. Following the directives of the UCCJEA, the Texas
court attempted to communicate on several occasions with the California court, which enjoyed
exclusive continuing jurisdiction under the Act. See id. §§ 152.204(d), .202. An extraordinary twist
in this case not contemplated by the UCCJEA has been the California court's continued refusal to
communicate with the Texas court regarding its concerns for the protection of these children. 
Despite its best efforts, the Texas court was unable to secure an acknowledgment from the California
court that upon their return to California, the children's best interests would be addressed and they
would not be placed in the home of Saavedra before that court required a complete home study and
formulated a transition plan. Without such assurance, the Texas court refused to enforce the
California order and entered additional orders regarding the custody of the children; those orders are
the subject of this appeal. 

 Saavedra asserts that the Texas court erred in refusing to enforce the orders issued
by the California court and lacked jurisdiction to modify those orders or enter new orders because
exclusive continuing jurisdiction remained in California. The attorney ad litem for the children
suggests that the Texas court could assume jurisdiction under the Hague Convention and could
properly modify the California order. We reject the ad litem's arguments and conclude that the trial
court lacked jurisdiction to modify the California orders; however, we construe the orders as
temporary orders rendered pursuant to the Texas court's continued exercise of temporary emergency
jurisdiction. Because this Court is generally without jurisdiction to consider appeals of temporary
orders, see id. § 105.001(e) (West 2002), we dismiss this appeal for want of jurisdiction.


BACKGROUND

 Saavedra, a Chilean citizen, married Schmidt in California in June 1991. The parties
separated in August 1993. Under the temporary orders in effect for almost four years, Schmidt and
Saavedra maintained joint legal custody of their two young daughters, but Schmidt was awarded
primary physical custody. Saavedra was granted only supervised visitation, presumably because of
a recent conviction for child molestation involving a family member. (2) Both parties were prohibited
from removing the girls from California without prior approval from the other parent or the
California court. In August 1997, Schmidt filed a petition in the California court seeking dissolution
of the marriage.

 Shortly after filing for divorce, Schmidt moved to Texas with the children without
providing notice to Saavedra or the California court. Once Schmidt's whereabouts were discovered,
she was served with an order to appear in the California court for further custody proceedings. In
April 1999, the dispute was referred to mediation. In the meantime, Saavedra and Schmidt agreed
to maintain joint legal custody of the children, but Saavedra continued to be limited to supervised
visitation until the date of mediation. On May 6, Schmidt filed in California a petition seeking
modification of the custody and visitation arrangements; she also asked the California court to
decline jurisdiction and transfer the matter to Texas. The California court refused to relinquish
jurisdiction and set the modification hearing for July 29. After several continuances, the hearing
commenced on October 15, 1999. Although the court had ordered her to produce the children,
neither Schmidt nor the girls were present at the hearing. Schmidt's counsel appeared on her behalf. 
Following the hearing, the California court changed the temporary orders to award sole physical and
legal custody of the children to Saavedra, and ordered that Schmidt have no contact with the children
(the October 1999 order). (3) The California court's decision was based in part on Schmidt's failure
to comply with its orders that she not remove the children from its jurisdiction. (4) Schmidt was again
ordered to return the children to California, which she refused to do.

 In February 2000, the Texas Department of Protective and Regulatory Services (the
Department) filed an original petition affecting the parent-child relationship in Travis County. The
Texas court awarded temporary managing conservatorship to the Department after finding an
immediate need for the issuance of temporary orders and the removal of the girls from the home of
Schmidt. (5) In June, Saavedra responded to the Department's suit by filing a special appearance, plea
to the jurisdiction, request for court to decline jurisdiction, and an original answer. Saavedra also
filed a request to register the California court's October 1999 order and a petition to enforce it by
delivering the children to him. See id. § 152.305.

 On July 5, 2000, the trial court held a chapter 262 hearing, see id. § 262.201 (West
2002), and considered Saavedra's enforcement action. During the hearing, the trial court judge
informed the parties that she had attempted to communicate with the California court pursuant to
section 152.112 of the UCCJEA. See id. § 152.112 (West 2002). The judge remarked that during
her initial conversation with Commissioner Robin Appel, (6) the judge presiding over the dispute in
California, the commissioner agreed to review the file, consider the big picture and the needs of the
children, and call the Texas judge the following day. (7) Nine months later, the Texas judge had not
heard from the California judge, and subsequent requests for court documents had gone unanswered. 
The Texas judge remarked that the California court had failed to consider the best interests of the
children or to conduct a thorough home study before awarding sole custody of the children to
Saavedra, despite his conviction for sexual molestation of a young girl. The trial court thus
announced that it was assuming temporary emergency jurisdiction of the children who were living
in Texas; the court then appointed the Department and Schmidt joint temporary managing
conservators, and granted Saavedra supervised visitation. 

 Following the July 5 hearing in Texas, an ex parte hearing was held in the California
court on Saavedra's application to modify the October 1999 custody order. The court modified its
earlier order by directing that the children be placed with the Alameda County Child Protective
Services (8) (CPS) upon their return to California. The modified order stated that the California court
continues to maintain exclusive jurisdiction under the UCCJEA. At no point did the California court
mention the best interests of the children, see Cal. Fam. Code § 3020 (West Supp. 2002), or require
an investigation to assure their safety in Saavedra's care. Nor did the California court advise the
Texas court of this modification.

 In August 2000, Saavedra filed with the Texas court a motion for further orders, a
plea to the jurisdiction, and a request for the Texas court to decline jurisdiction regarding the custody
rights of these parents. Saavedra attached a copy of the California court's modified custody order,
directing that the children be placed with the Alameda County CPS upon their return to California. 
A hearing was held on August 14, during which the Texas court expressed its dissatisfaction with
the Alameda County CPS's "woefully inadequate" home studies, the failure of the California court's
orders to address the best interests of the children, and the California court's continuing refusal to
communicate with the Texas court. On that same day, the Texas court signed the temporary order
memorializing its earlier ruling following the July 5 hearing. This temporary order, dated August
14, 2000, was to remain in effect for one year or until the California court entered a final decree of
divorce. In December 2000, although it still had made no attempt to communicate with the Texas
court, the California court rendered a final judgment of dissolution of marriage, in which it merely
affirmed the "current custody order." 

 In May 2001, Saavedra filed an amended petition for enforcement of child custody
determination, requesting that the Texas court grant immediate physical custody of the girls to the
Alameda County CPS. The following month, the attorney ad litem appointed by the Texas court to
represent the children filed a motion asking the Texas court to assume jurisdiction of this custody
dispute and to modify both the California court's order and the Texas court's temporary order. The
Texas court held a hearing on June 25, 2001 on Saavedra's petition for enforcement and the ad
litem's motion to assume jurisdiction and modify the existing custody orders. 

 At the hearing, the trial court heard from several witnesses, including Anna Warde,
a case worker with the Department. Warde opined that the home study conducted by the Alameda
County CPS was "probably to date the worse [sic] home study I've ever seen." According to Warde,
the home study was based entirely on information supplied to the investigating agency by Saavedra
himself. Not only did it appear that the Alameda County CPS had performed an inadequate home
study, but the California court still refused to communicate or cooperate with the Texas trial court,
causing the Texas judge to exclaim in frustration: "In my years on the Bench, I have not experienced
a situation where I have not had a Court respond to my requests, or attempt to cooperate with an
agency for the best interest of the children; which makes me question whether they have ever
attempted to consider fully the best interest of these children in light of all the changes that have
occurred."

 Faced with these circumstances, the Texas court signed two orders on September 20,
2001, memorializing its rulings following the June 25 hearing. The combined effect of the orders
was to deny Saavedra's petition for enforcement, name Schmidt as sole managing conservator of the
children and Saavedra as possessory conservator, and mandate that all prior orders of the Texas court
remain in full force and effect. Saavedra's complaints about the two orders have been consolidated
on appeal.


DISCUSSION

 Though he raises a number of issues on appeal, Saavedra essentially asks this Court
to determine (1) whether the Texas trial court exceeded its jurisdiction in entering the two September
2001 orders and (2) whether the court erred in refusing to enforce the California custody orders. The
Texas court relied on three grounds for exercising jurisdiction: (1) Texas had become the home state
of the children; (2) the trial court was exercising temporary emergency jurisdiction; and (3) the trial
court could properly exercise modification jurisdiction because this state is a more appropriate or
convenient forum for addressing the needs of the children:


 The Court further finds that DEBRA KAY SCHMIDT has been a domiciliary
of the State of Texas and a resident of Travis County for more than 6 consecutive
months immediately before the commencement of this child custody proceeding. 
During this time, the children have lived with DEBRA KAY SCHMIDT pursuant to
orders of this court . . . .


 The Court further finds that this court has invoked temporary emergency
jurisdiction over the parties and subject matter of this suit under the authority of
Texas Family Code § 152.204. . . . The Court further finds that this Court is a more
appropriate forum to consider the child custody issues pertaining to the children the
subject of this suit and that it is appropriate for this Court to proceed with this
modification action.



 In refusing to enforce the California court's custody determinations, the Texas court
not only relied on its assumption of temporary emergency jurisdiction, but also referred to the
parties' agreement to be bound by the Hague Convention on the Civil Aspects of International Child
Abduction (the Convention), Oct. 25, 1980, 19 I.L.M. 1501, (9) suggesting that the Convention
provides an additional basis for its refusal to enforce the California court orders: 


 The Court further finds that by its incorporation of all prior orders, the
California Judgment further requires that the provisions of the prior Order Pursuant
to Stipulation rendered on or about April 21, 1995 (and filed on April 26, 1995) shall
apply to MANUEL SAAVEDRA and DEBRA KAY SCHMIDT. That Order
requires that MANUEL SAAVEDRA and DEBRA KAY SCHMIDT "shall abide by
the 1980 Hague Convention on the Civil Aspects of International Child Abductions
and the International Child Abduction Remedies Act (P/L/ 100-300), and that these
laws may be used to enforce any custody disputes in regard to the Stipulation filed
with the Superior Court of California, County of San Joaquin."



 The issues raised on appeal are governed by the UCCJEA, adopted by Texas in 1999. 
Uniform Child Custody Jurisdiction & Enforcement Act, 76th Leg., R.S., ch. 34, § 1, 1999 Tex. Gen.
Laws 52. The UCCJEA is the successor statute to the Uniform Child Custody Jurisdiction Act ( the
UCCJA) and shares its goal of resolving custody disputes between geographically separated parents. 
Phillips v. Beaber, 995 S.W.2d 655, 659 & n.2 (Tex. 1999); In re McCoy, 52 S.W.3d 297, 302 (Tex.
App.--Corpus Christi 2001, orig. proceeding). The UCCJA was designed to:


(1) Avoid jurisdictional competition and conflict with courts of other States in
matters of child custody . . . ; 


(2) Promote cooperation with the courts of other States to the end that a custody
decree is rendered in that State which can best decide the case in the interest of
the child; 


(3) Discourage the use of the interstate system for continuing controversies over
child custody; 


(4) Deter abductions of children;


(5) Avoid relitigation of custody decisions of other States in this State; and


(6) Facilitate the enforcement of custody decrees of other States.



Uniform Child-Custody Jurisdiction & Enforcement Act (UCCJEA) § 101 cmt., 9 U.L.A. 657
(1999).


Modification

 Saavedra complains that the trial court erred in exercising subject matter jurisdiction
over the children to modify the California custody orders. He asserts that California had exclusive
continuing jurisdiction pursuant to the UCCJEA, and that California had expressly refused to decline
that jurisdiction. Because subject matter jurisdiction is a question of law, we apply a de novo
standard of review. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). Generally,
a court that has jurisdiction to make an initial child custody determination retains exclusive
continuing jurisdiction over future custody disputes. Tex. Fam. Code Ann. § 152.202. "Initial child
custody determination" refers to the first child custody order concerning a particular child. Id.
§ 152.102(8). Under the UCCJEA, a court has jurisdiction to make an initial child custody
determination if the state in which the proceeding is initiated is (1) the home state of the child on the
date of the commencement of the proceeding, or (2) was the home state of the child within six
months before the commencement of the proceeding and a parent continues to live in that state. Id.
§ 152.201. In this case, it is undisputed that California was the home state of the children and
properly exercised jurisdiction in making the initial child custody determination.

 Generally, the court that made the initial child custody determination (in this case,
the California court) will retain exclusive continuing jurisdiction over ongoing custody disputes,
unless (1) that court determines that the children and one parent no longer have a significant
connection with the state and substantial evidence is no longer available there concerning the
children's care, protection, training, and personal relationships; or (2) either that court or a court of
another state determines that the children and the children's parents no longer reside in the state. Id.
§ 152. 202. Here, the California court made no such determination. And because the father
continues to reside in California, the Texas court could not have determined that the children and
the children's parents no longer reside in California. See id.; UCCJEA § 202 cmt. 1, 9 U.L.A. 674;
see also In re Bellamy, 67 S.W.3d 482, 484 (Tex. App.--Texarkana 2002, no pet.) (holding that so
long as one parent lives in original decree state, that state is only one that can determine whether
jurisdiction continues). The Texas court's determination that Schmidt and the children have resided
in Texas for more than six consecutive months before the commencement of the modification suit
filed in Texas is of no significance. The California court retains exclusive continuing jurisdiction
and is the only state that can determine if it will continue to exercise that jurisdiction. 

 Absent the California court's relinquishment of that exclusive continuing jurisdiction,
the Texas court was without jurisdiction to modify the California orders. A court of this state may
not modify a custody determination made by the California court unless (1) the California court
determines it no longer has exclusive continuing jurisdiction or that a court of this state would be
a more appropriate forum; or (2) a court of this state or the California court determines that the
children and their parents no longer reside in California. (10) Tex. Fam. Code Ann. § 152.203. Neither
circumstance exists in this case. It is of no consequence that the Texas court determined that it was
a more appropriate forum; the California court must make this determination before a court of this
state may modify the California court's child custody determinations. (11) We agree with Saavedra that
the Texas court erred to the extent that it attempted to exercise subject matter jurisdiction and modify
the custody rights of these parents.

 Having found that the Texas court did not have jurisdiction to modify the California
custody orders, we need not address Saavedra's complaint that the Texas court should have declined
to exercise its jurisdiction under the "clean hands" section of the family code. (12) See id. § 152.208.


The Hague Convention

 Saavedra also complains that the trial court erred by exercising subject-matter
jurisdiction under the Hague Convention because this case does not involve international child
abduction. In choosing to apply the Convention, the court relied on a prior California court order
in which Schmidt and Saavedra agreed to be bound by the Convention. (13) The court cited the
Convention as a basis for refusing to enforce the California court's child custody determination:


 The Court finds that the children have now settled into their environment in
the home of Respondent DEBRA K. SCHMIDT. See Article 12, Hague Convention. 
The Court finds that a grave risk that return of the children the subject of this suit to
MANUEL SAAVEDRA would expose the children to physical or psychological
harm or otherwise place the children in an intolerable situation. See Article 13(a),
Hague Convention. 



 The Hague Convention was established in 1980 to provide a remedy for international
child abductions. Hague Convention, Preamble; International Child Abduction Remedies Act, 42
U.S.C.A. § 11601(a)(4) (West 1995). It provides an international complement to the UCCJEA and
the federal Parental Kidnaping Prevention Act (the PKPA), 28 U.S.C.A. § 1738A (West 1994 &
Supp. 2002). See 42 U.S.C.A. § 11603(h) (West 1995). The remedies available under the
Convention may be invoked when the moving party establishes by a preponderance of the evidence
that (1) he or she had lawful custody rights to the child when the child was wrongfully removed; (2)
the child was wrongfully removed or retained from his or her habitual residence; and (3) at the time
of removal, those custody rights were actually exercised. 42 U.S.C.A. § 11603(e)(1); In re Prevot,
59 F.3d 556, 560 (6th Cir. 1995). Even if these requirements have been satisfied, a court's duty to
order return of a wrongfully removed child is not absolute, and the two provisions cited by the Texas
court set forth grounds upon which return may be denied. In other words, a court may decline to
return the child if (1) return proceedings are commenced a year or more after the wrongful removal
and the child is settled in his or her new environment, Hague Convention, Article 12, or (2) there is
a grave risk that return would expose the child to physical harm or place the child in an intolerable
situation, Hague Convention, Article 13(b). See also 42 U.S.C.A. § 11603(e)(2); Hague
International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,510
(March 26, 1986).

 Here, the Texas court appears to have relied on exceptions to mandatory return of the
children under the Convention even though neither party invoked the remedies available under the
Convention. The Convention is intended to deter abductions by promoting enforcement of facially
valid orders subject only to one of the exceptions; wrongful removal of a child will not gain the
abductor a new forum in which to resolve the custody dispute. 42 U.S.C.A. § 11601(b)(4)
(Convention does not empower courts to determine merits of custody claims); Friedrich v. Friedrich,
983 F.2d 1396, 1400 (6th Cir. 1993). More importantly, however, the dispute between Schmidt and
Saavedra is an interstate dispute; the Convention only applies to child abduction cases that are
international in nature. (14) See 42 U.S.C.A. § 11601(b)(3)(A). Thus, despite the parties' agreement
to be bound by the Convention, the Convention does not govern this jurisdictional dispute between
Texas and California. Furthermore, the Convention is intended to complement not supplant the
goals of the UCCJEA and the PKPA. By granting a new forum to a parent who wrongfully removed
the children from California, the Texas trial court contravened the basic principle of the Convention,
as well as the UCCJEA and the PKPA. We therefore conclude that the trial court could not rely on
the Convention as a basis for assuming jurisdiction to modify rather than enforce the California
court's child custody determination.


Enforcement of Child Custody Determination Under Section 152.306

 Saavedra also argues that the trial court erred in refusing to enforce the California
court's custody determination, as enforcement was required under section 152.306 of the family
code. See Tex. Fam. Code Ann. § 152.306. Sections 152.303 and 152.306(b) instruct courts of this
state to recognize and enforce a child custody determination of a court of another state. Tex. Fam.
Code Ann. § 152.303, .306(b); see also UCCJEA § 303 cmt., 9 U.L.A. 690-91 (courts have duty to
enforce and not modify custody determinations made by other states in substantial conformity with
UCCJEA); PKPA, 28 U.S.C.A. § 1738A(a) (same). Under section 152.310, upon finding that a
petitioner is entitled to immediate physical custody of the child, the court must award that party
custody without relitigating the custody rights. Tex. Fam. Code Ann. § 152.310. If the custody
determination has been registered, there is only one defense to its enforcement: that the order has
been vacated, stayed, or modified by a court with jurisdiction to do so. Id. § 152.310(a)(2); see also
UCCJEA, 9 U.L.A. 653 (Prefatory Note) (enforcing court's inquiry is limited because neither
UCCJEA nor PKPA allows enforcing court to modify custody determination). Unless Schmidt
could establish that the California order had been stayed or vacated, the Texas court was required
to enforce it. And to the extent that the Texas court order can be construed as a final order refusing
to enforce California's child custody determination, this Court would be required to reverse that
order. (15)


Temporary Emergency Jurisdiction

 Section 152.310, however, also provides an alternative to rendering a final order on
a petition to enforce when circumstances warrant the assumption of temporary emergency
jurisdiction. Tex. Fam. Code Ann. § 152.310; see also UCCJEA § 303 cmt., 9 U.L.A. 690 ("If the
child would be endangered by the enforcement of a custody or visitation order, there may be a basis
for the assumption of emergency jurisdiction . . . ."). In the order announcing its refusal to enforce
the California order, the Texas trial court included at least two bases for its assumption of
jurisdiction: home-state jurisdiction, which we have held was error, and temporary emergency
jurisdiction. If the court issued an order pursuant to its temporary emergency jurisdiction, the court
may not have erred by refusing to enforce the California court's order. (16) See UCCJEA § 303 cmt.,
9 U.L.A. 690 (upon finding of emergency, court issues temporary order directing parties to proceed
either in court exercising continuing jurisdiction or court with jurisdiction to modify).

 Under section 152.204, a court of this state may assume temporary jurisdiction over
a custody dispute if the child is present in this state and it is necessary to protect a child subjected
to or threatened with mistreatment or abuse. Tex. Fam. Code Ann. § 152.204. A trial court enjoys
broad discretion in issuing orders for immediate protection of a child. Garza v. Harney, 726 S.W.2d
198, 202 (Tex. App.--Amarillo 1987, orig. proceeding). States have a parens patriae duty to
children within their borders, and the possibility that allegations of immediate harm might be true
is sufficient for a court to assume temporary emergency jurisdiction in the best interests of the child
under the UCCJEA. In re Nada R., 108 Cal. Rptr. 2d 493, 500 (Ct. App. 2001); In re Joseph D., 23
Cal. Rptr. 2d 574, 580 (Ct. App. 1993) (quoting Hache v. Riley, 451 A.2d 971, 975 (N.J. Super. Ct.
1982)). The duty of states to recognize and enforce a custody determination of another state must
yield if circumstances require temporary emergency orders to protect the child. UCCJEA § 204 cmt.,
9 U.L.A. 677 (duties of states to recognize, enforce and not modify custody determinations of other
states do not take precedence over need to protect child). Any order issued under emergency
circumstances must be temporary in nature; the order must specify a period that the court considers
adequate to obtain an order from the state with jurisdiction. Tex. Fam. Code Ann. § 152.204(c);
Garza, 726 S.W.2d at 203 (holding court exercising temporary emergency jurisdiction was
empowered to act, but only on short term, temporary, emergency basis). The temporary order shall
remain in effect only until proper steps are taken in the original forum state to adequately protect the
children or until the specified period expires. Tex. Fam. Code Ann. § 152.204(c); Garza, 726
S.W.2d at 203.

 Once a court assumes temporary emergency jurisdiction, it has a duty to communicate
with the other state that has asserted custody jurisdiction and to retain a record of those
communications. Tex. Fam. Code Ann. §§ 152.110(f), .204(d). This mandatory duty of cooperation
between the courts of different states is the hallmark of the UCCJEA; it is this cooperation that is
intended to lead to an informed decision on custody. Joseph D., 23 Cal. Rptr. 2d at 583 (quoting Fry
v. Ball, 544 P.2d 402, 407 (Colo. 1975); Guardianship of Donaldson, 223 Cal. Rptr. 707, 714 (Ct.
App. 1986)). One of the reasons for consulting with the other state's court is to determine the
duration of the temporary order. Tex. Fam. Code Ann. § 152.204(d); In re C.T., 121 Cal. Rptr. 2d
897, 906 (Ct. App. 2002); see also Patricia M. Hoff, The ABC's of the UCCJEA: Interstate Child-Custody Practice Under the New Act, 32 Fam. L.Q. 267, 284 (1998). The court exercising exclusive
continuing jurisdiction has the reciprocal duty to communicate with the court exercising emergency
jurisdiction. Tex. Fam. Code Ann. § 152.204(d); see also Hoff, supra, at 284. 

 Temporary emergency jurisdiction is reserved for extraordinary circumstances. 
UCCJEA § 204 cmt., 9 U.L.A. 677. A review of this record reveals that the Texas trial court
believed it was faced with such extraordinary circumstances when it issued the orders on appeal here. 
At the July 5, 2000 hearing, (17) Judge Meurer commented on her attempts to communicate with the
California court:


 In speaking with Commissioner Appel, it is apparent that the courts and the
judges are extremely upset with Ms. Schmidt. It is also a great concern that perhaps
in their anger with Ms. Schmidt for her failure to comply with court orders, they have
failed also to address the best interest of the children, who are the subject of this
lawsuit.


 I have requested from Commissioner Appel that she have CPS in California
work with us to arrange visitation, and was told no. The fact that the Department
there has made a home study that's totally inadequate . . . I find ludicrous.



The court further noted that before he was awarded sole custody, Saavedra had only enjoyed
supervised visitation with the children:


 The record should reflect that the latest order that came down from California
sets forth that up until and through 1997, [Saavedra] has always been limited to
supervised visitation.


 It should further be noted that when he was given sole custody, the Court then
found that the children cannot be placed in the father's home, and he is to have
supervised custody with the children. And now California has simply dropped that,
and given custody with the finding that this Court cannot accept, and that is; that
there's a, "minimal" risk of re-offending so long as he maintains sobriety. I don't
believe that I am willing to take any risks with that statement.



Further expressing her frustration with the California court's refusal to communicate with her, Judge
Meurer commented:


 I have asked California to assist me. Their intent is to not make any
reasonable orders for transition. I have asked to place these children in California
CPS with the Court supervising the visits and making the transition. That request
was denied. 


. . . .


 I understand that there are orders there. I understand that the [UCCJEA] can't
contemplate that Courts will [not] communicate. I have never received a call from
any judge in California. I have been promised calls back, and they have never
returned my calls. They have never answered my questions. The only thing I got
back was an order affirming everything again.



 During the August 14 hearing, Saavedra brought to the trial court's attention a
modified California order decreeing that upon their return to California, the children shall be placed
with Child Protective Services. The Texas court responded:


 Mr. Lusk [Saavedra's counsel], I saw the home studies by Child Protective
Services. I find it was woefully inadequate. I have found and made findings that the
Court in California has continuously refused to communicate with this Court, which
is well shown again by the fact that I've never seen this [1999 modified order],
excepting that I was provided a copy of this order by the District Attorney's office.


. . . .


 It would appear to me that if anything, these orders are simply a manipulation
of the system. They do not address best interest. There's no indication that they
address best interest. And there's no indication from anyone that that has been
addressed. And this Court will continue to take that responsibility until it is fully
addressed.



 At the June 25, 2001 hearing on Saavedra's motion to enforce, the trial court heard
disturbing evidence from a Texas CPS social worker, Anna Warde, indicating that the Alameda
County CPS had been uncooperative and had not performed an adequate home study. During cross-examination, Warde confirmed that Alameda County CPS had approved the children's placement
with Saavedra:


Q. With respect to the home study that was done in California.


A. Uh-huh.


Q. That home study approved Mr. Saavedra's home as a placement for the children,
didn't it?


A. It did. And it only used Mr. Saavedra's information and didn't try and get any
information from other parties.


Q. Well, it - - it used all of the information that you provided to them, didn't it?


A. I did not provide anything to them. I was not contacted by those people.


. . . .


Q. There was no background information provided to them for - - to even tell them
what the purpose of the home study was.


A. No.


Q. They just got a request to do a home study on Manuel Saavedra and his address,
and that was it?


A. And that's it. And they contacted him and him only.



 Questioning by Schmidt elicited more frustration from Warde regarding her dealings
with the Alameda County CPS:

Q. . . . Did the California CPS office cooperate with your agency in arranging
visitation for Mr. Saavedra and the children?


A. No. I haven't been able to have any contact with - - I don't know what's going
on in California CPS but they do not return phone calls.


Q. But you did make an attempt?


A. I made several attempts.



Warde testified that the California CPS had set up no transition plan for the children. 

 It is apparent from the record that the Texas court perceived an emergency situation
warranting its exercise of temporary emergency jurisdiction when it discovered that the California
court had awarded Saavedra sole legal custody of the children, had implemented no transition plan,
and had disallowed any contact between Schmidt and the children. Saavedra, who had been
convicted of molesting a younger female family member, had never enjoyed unsupervised visitation
with his young daughters in California or in Texas. The same California court that awarded
Saavedra sole legal custody of the children had previously required that Saavedra's access to them
be supervised. And yet, seemingly determined to punish Schmidt without regard for the children's
best interests, the California court decided that Saavedra was suddenly qualified to have sole custody
of the children. Schmidt, on the other hand, was prohibited from having any contact with the
children because she had violated prior court orders. The Texas court was rightfully alarmed that
sole custody of two young girls was awarded to a registered sex offender, while their mother was not
allowed to maintain any contact with them. See Brigitte M. Bodenheimer, Progress Under the
Uniform Child Custody Jurisdiction Act & Remaining Problems: Punitive Decrees, Joint Custody,
& Excessive Modifications, 14 Cal. L. Rev. 978, 1004, 1007 (1977) (punitive decrees do not
command respect that is due other out-of-state custody decrees and should not be recognized under
UCCJA); Brigitte M. Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative
Remedy for Children Caught in the Conflict of Laws, 22 Vand. L. Rev. 1207, 1240 (1969)
(expressing doubt that "there is ever justification for punitive custody changes which disrupt a
child's life merely to uphold the authority of a court, especially since the disciplinary measure
usually leads to further defiance of the court and lack of respect for the punitive measures by other
courts"). It expressed alarm at the totally inadequate study of Saavedra's home and a modified order
that appeared to superficially address the Texas court's concerns. The Texas court noted that it had
been unable to secure any assurance that the California court would implement a transition plan to
assist the children with this drastic upheaval in their daily living arrangements.

 Faced with these circumstances and the failure of the California court to address the
best interests of the children in any of its orders, the Texas court assumed temporary emergency
jurisdiction in July 2000 and again relied on its emergency jurisdiction in announcing its September
2001 orders. Although the UCCJEA does not allow reevaluation of another state's best interest
determination, see UCCJEA, 9 U.L.A. 652 (Prefatory Note), section 152.204 is specifically designed
to ensure protection of a child. See id. § 204 cmt., 9 U.L.A. 677. 

 After the Texas court first assumed temporary emergency jurisdiction in July 2000,
its concerns were compounded when the California court refused to communicate about plans for
these two girls. Our review of the record underscores the total lack of communication by the
California court. The UCCJEA was premised on the assumption that sister state courts will
communicate with one another; indeed, communication is mandatory under the Act once a court
assumes temporary emergency jurisdiction. See Tex. Fam. Code Ann. § 152.204(d); Joseph D., 23
Cal. Rptr. 2d at 583. Cooperation between courts is required to resolve circumstances that threaten
the safety of children, and communication is necessary to limit the duration of the temporary orders. 
See Tex. Fam. Code Ann. § 152.204(d). These goals cannot be attained without effective
communication between the state courts.

 The California court's modification of its order placing the children with the Alameda
County CPS is no substitute for the kind of communication and cooperation between the courts that
would ensure the effective protection of these children. According to Warde, the Alameda County
CPS determined that Saavedra's home was approved as a placement for the children, based on a
"woefully inadequate" home study. And although the California court modified its order, it had
previously determined that granting Saavedra sole legal custody was appropriate, in spite of his prior
molestation conviction and the fact that he had never enjoyed unsupervised visitation with the
children. Furthermore, no transition plan had been implemented to ensure a healthy transition for
the children. The California court consistently demonstrated its desire to punish Schmidt for her
failure to comply with its orders, rather than addressing the best interests of the children in any of
its orders. The Texas court was justified in questioning the motivations behind the California court's
decision to modify its orders. It expressed concern that the children not simply go in the front door
of the Alameda County CPS and out the back door to Saavedra. The California court's actions are
inexplicable; the Texas trial court aptly observed, "In my years on the Bench, I have not experienced
a situation where I have not had a Court respond to my requests, or attempt to cooperate with an
agency for the best interest of the children . . . ." Likewise, this Court has never seen the goals of
the UCCJEA thwarted in such a blatant manner. The only defense to enforcement of the California
order was for the Texas court to extend its temporary emergency jurisdiction. The court had received
no assurance that the emergency situation had been resolved or even that it would soon be resolved
by the California court.

 We are not alone in remarking on the California court's inexplicable failure to
communicate after the Texas trial court assumed temporary emergency jurisdiction to protect these
children. When Schmidt was found guilty of contempt and jailed (for removing the children in
violation of the initial custody order and for not returning them as subsequently ordered), the
California Court of Appeal for the third appellate district granted two petitions for writ of habeas
corpus, recounting in detail the California trial court's "indefensible refusal to communicate with
the Texas court." In re Schmidt, Nos. C040583, C040942, C040966, slip op. at 26, 2002 Cal. App.
Unpub. LEXIS 7016, at *31 (Ct. App. July 29, 2002). Moreover, the California appellate court
opined that the record "shows the Texas court's assumption of emergency jurisdiction was not the
act of a renegade court oblivious to the UCCJEA," and that "the dilemma faced by the Texas court
in deciding, albeit reluctantly, to assume emergency jurisdiction over the children was real and
simply cannot be downplayed." Id., slip op. at 25, 34, 2002 Cal. App. Unpub. LEXIS 7016, at *30-32.

 We reiterate that the trial court's assumption of temporary emergency jurisdiction
does not include jurisdiction to modify the California court's child custody determination. See
Abderholden v. Morizot, 856 S.W.2d 829, 834 (Tex. App.--Austin 1993, no writ) (holding that
exercise of emergency jurisdiction does not confer authority to make permanent custody disposition
or modify custody decree of court with jurisdiction); Garza, 726 S.W.2d at 203 (same) (quoting
Hache, 451 A.2d at 975). A court's exercise of temporary emergency jurisdiction is temporary in
nature and may not be used as a vehicle to attain modification jurisdiction for an ongoing, indefinite
period of time. The Texas court failed to include a definite duration for its temporary emergency
orders. The temporary orders must remain in effect for only as long as necessary to ensure that the
emergency situation will be resolved and the safety of the children will be protected. See Tex. Fam.
Code Ann. § 152.204; Garza, 726 S.W.2d at 203. The duration of the temporary orders is generally
an issue to be determined when the courts of two sister states communicate with one another. This
Court, however, is without jurisdiction to consider any omissions in the temporary orders.

 Despite the prior history of this case, the California court can protect its exclusive
continuing jurisdiction over this custody dispute by cooperating to resolve the emergency situation
and by ensuring the Texas court that it will address the safety of these children, as envisioned by the
UCCJEA. The Texas court may enter temporary orders maintaining custody in Schmidt for a period
of time no longer than reasonably necessary to allow the California court to consider the evidence
that was before the Texas court (18) and to develop a realistic transition plan appropriate to all the
circumstances that will provide the children with access to both parents, who seem to need guidance
in resolving their dispute over custody rights. See, e.g., Joseph D., 23 Cal. Rptr. 2d at 584
(authorizing trial court's rendition of temporary orders not strictly within parameters of UCCJEA
under its equity powers). The California court may issue a similar order in accordance with the
cooperative spirit of the UCCJEA, ensuring that the two girls will not be returned to Saavedra until
a thorough home study has been conducted and an appropriate transition plan implemented,
including access to both parents. Such an order would assure the Texas court that both courts will
work to resolve the emergency situation and allow the Texas court to confidently return the girls to
California. By so communicating, the California court and the Texas court should agree on a time
period when these plans will be in place to ensure the protection of the children. Then, the Texas
court must relinquish its temporary emergency jurisdiction. 


CONCLUSION

 We hold that the Texas court was without jurisdiction to modify the California court's
custody determination. The Texas court, however, relied on temporary emergency jurisdiction to
enter its orders. The record reflects that the California court refused to communicate with the Texas
court concerning realistic plans to protect the safety of these children. The UCCJEA recognizes
emergency concerns over a child's safety as a defense to enforcement of another state's custody
orders, but only until the emergency can be resolved. Because we construe the Texas court's orders
as temporary orders rendered pursuant to its exercise of temporary emergency jurisdiction, we
dismiss this appeal for want of jurisdiction. (19) The cause remains pending in the trial court.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Dismissed for Want of Jurisdiction

Filed: October 31, 2002

Publish

1. The UCCJEA is the successor statute to the Uniform Child Custody Jurisdiction Act (the
UCCJA). The National Conference of Commissioners on Uniform State Laws adopted the UCCJEA
in 1997 to (1) address inconsistent interpretations of the UCCJA, (2) provide clearer standards for
exercising jurisdiction, and (3) provide a remedial process to enforce interstate child custody
determinations. Uniform Child-Custody Jurisdiction & Enforcement Act (UCCJEA), 9 U.L.A. 649-50 (1999) (Prefatory Note). The Texas Legislature amended the family code and replaced the
UCCJA with the UCCJEA in 1999. Uniform Child Custody Jurisdiction & Enforcement Act, 76th
Leg., R.S., ch. 34, § 1, 1999 Tex. Gen. Laws 52. Throughout this opinion, we refer to Texas's
version of the UCCJEA, which is substantially identical to the uniform Act, unless we indicate
otherwise.
2. Although the record filed with this Court does not include the details of this criminal
conviction, it appears that Saavedra was convicted of sexually molesting Schmidt's twelve-year-old
niece in California in 1992. He was placed on probation for the offense but continued to register as
a sex offender.
3. The order was later modified after Schmidt apprised the court of a California family code
statute that provides: "No person shall be granted physical or legal custody of, or unsupervised
visitation with, a child if the person is required to be registered as a sex offender . . . where the victim
was a minor, . . . unless the court finds that there is no significant risk to the child and states its
reasons in writing or on the record." Cal. Fam. Code § 3030(a) (West Supp. 2002). The California
court accordingly included the special findings mandated by the statute, concluding that Saavedra
poses no significant risk to the children based on the evidence in the record, including Saavedra's
sex offender program counselor's opinion that Saavedra is "at minimal risk of reoffending as long
as he maintains sobriety."
4. In its order, the California court stated that its decision was mandated by the following
findings:


1. [Schmidt] has failed to comply with prior court orders relating to the
children.


2. [Schmidt] has refused to allow supervised visits with the respondent,
father.


3. [Schmidt] has fled the jurisdiction to the [sic] defeat the respondent,
father's visitation rights.


4. [Schmidt] has falsely claimed that respondent, father, raped her.


5. [Schmidt] has attempted to have respondent, father, deported.


6. [Schmidt] has engaged in child alienation by telling the children the
respondent, father, is a bad person and by keeping the children away from
him.


7. The respondent, father is willing to share the children with the petitioner,
mother and the mother is not willing to allow father to visit the children.


8. [Schmidt] has agreed to share parenting orders with no intent to carry out
that agreement or comply with those orders.
5. It appears that California was attempting to extradite Schmidt to face criminal charges for
child concealment, and while the California court had informed the Texas court that it would be
inappropriate to return the children to Saavedra, no other arrangements were in place. 
6. Commissioner Appel's role in California is equivalent to the role of a family court master
or associate judge in Texas.
7. The record filed with this Court includes a memorandum prepared by Judge Meurer, the
Texas judge, recording the details of her conversation with Commissioner Appel. See Tex. Fam.
Code Ann. § 152.110(f).
8. It appears that Saavedra had moved from San Joaquin County to Alameda County by this
time.
9. On April 26, 1995, the California court issued an order pursuant to a stipulation signed by
Schmidt and Saavedra, in which they agreed to be bound by the terms of the Hague Convention on
the Civil Aspects of International Child Abduction and the International Child Abduction Remedies
Act. See 42 U.S.C.A. §§ 11601-11610 (West 1995 & Supp. 2002). Presumably, the parties entered
into this agreement because Saavedra is a citizen of Chile and a permanent resident of the United
States.
10. The modifying court must also have jurisdiction to make an initial custody determination
under section 152.201(a)(1) (home state jurisdiction) or 152.201(a)(2) (significant connections
jurisdiction). Tex. Fam. Code Ann. § 152.203.
11. In its modified custody order dated July 25, 2000, the California court specifically states
that it "has and maintains pursuant to the UCCJEA . . . exclusive home-state jurisdiction over all
issues relating to the custody of the minor children of this marriage."
12. We note that section 152.208 is not intended to restrict a court's exercise of temporary
emergency jurisdiction. Tex. Fam. Code Ann. § 152.208 ("Except as otherwise provided in Section
152.204 [the temporary emergency jurisdiction statute] or other law of this state, . . . ."). Thus, we
do not address the effect of Schmidt's conduct on the court's exercise of temporary emergency
jurisdiction.
13. The parties presumably entered into this agreement because Saavedra is a citizen of Chile. 
If the controversy here were international in nature, there is no dispute that the parties would be
bound by the Convention with or without their agreement, as Chile is a signatory to the Convention.
14. The Convention uses the term "Contracting State," but because of the international scope
of the Convention, the term state refers to country. See Brigitte Bodenheimer, The Hague Draft
Convention on International Child Abduction, 14 Fam. L. Q. 99, 100 n.9 (1980/81).
15. A final order in an enforcement proceeding may be appealed. Tex. Fam. Code Ann.
§ 152.314.
16. If the orders were indeed temporary orders, as opposed to a final order denying Saavedra's
petition to enforce a child custody determination, those orders are not subject to appeal. Tex. Fam.
Code Ann. § 105.001(e).
17. The reporter's record filed with this Court does not include any prior hearings or
proceedings. The July 5 hearing is the earliest hearing included in the reporter's record.
18. The Texas court heard evidence indicating that Schmidt and Saavedra had been able to
work out visitation between them in a "very civil manner." Both parties were complying with the
Texas court's orders. The court also heard evidence that the two girls have a positive established
relationship with their mother and have settled into their environment in their mother's home; the
girls are continuing to adjust to visitation with their father. Warde testified that in her opinion, the
girls would face tremendous emotional distress if returned to their father at this time and their
placement with the Alameda County CPS could be extremely traumatic. The California court did
not have this information when it rendered its final divorce decree. See Brigitte Bodenheimer,
Uniform Child Custody Jurisdiction Act, 3 Fam. L. Q. 304, 312 (1969) (observing that various
provisions in UCCJA facilitating collection of information from sister states assures that custody
decision that is to be enforced has been reached under conditions making it worthy of respect and
deference by other states).
19. Because we construe the Texas court's orders as temporary orders and dismiss this appeal
for want of jurisdiction, we need not address Saavedra's complaint that he had not been served with
citation on the ad litem's motion to modify nor his complaint that the trial court erred in denying his
request for fees, costs, and expenses under sections 152.310 and 152.312 of the family code. See
Tex. R. App. P. 47.1.